**FIRST CITY NATIONAL BANK OF BEAUMONT (Formerly First Security National Bank of Beaumont) and George W. Brown, Jr., Trustees of the Hannah C. Phelan Trust, Appellants,**

v.

**Antoinette PHELAN, Appellee.**

**No. 09–85–269 CV.**

Court of Appeals of Texas, Beaumont.

Sept. 11, 1986.

Rehearing Denied Oct. 1, 1986.

Kent M. Adams and Sandra Sparr Carrington, Brown & Adams, Beaumont, for appellants.

Everett Lord and Tom Mulvaney, Beaumont, for appellee.

## OPINION

BROOKSHIRE, Justice.

This case has its genesis in an amended decree dissolving the marriage of Antoinette Phelan and John Henry Phelan, III. It was dated April 30, 1975, in cause No. 87,988–C. Three children were born of the marriage, all minors at the time of the divorce. The Amended Decree of Divorce set forth; firstly, that John Henry was to pay $250.00 per month for the support of his 3 minor children until the youngest child reached the age of 18; secondly, the court further concluded, since the needs of the 3 children exceeded "the present capacity of the respondent to contribute to their support", that John Henry was obligated to further support the children to the extent of the income due him from the testamentary trust created by his paternal grandmother, Hannah Cunningham Phelan. This distribution was to be administered by the Respondent-Trustees who were First Security National Bank of Beaumont and George W. Brown, Jr., as joint independent executors and trustees of the Estate of Hannah Cunningham Phelan, Deceased.

This amended divorce decree provided, in relevant part:

" ... For the last fiscal year ended 31 January 1975, respondent's *pro rata* distributable share of the income from such trust amounted to $3,045.28, which sum was disbursed to him in approximately equal quarterly installments, subject to adjustment for attorney's fees reasonably incurred by the respondent-trustees during such fiscal year in connection with this proceeding. *The Court con-cludes that respondent is obligated further to support the children to the extent of the income due him from the trust, and respondent stipulates his agreement that any such support obligations imposed upon him by this Court may be satisfied by distributions from the respondent-trustees directly for the support of the children.* These circumstances considered, the Court ORDERS, ADJUDGES and DECREES, pursuant to Texas Family Code Ann. Sec. 14.05[ (c) ], that until further Order of this Court, respondent-trustees shall pay all income distributions otherwise due respondent to the Jefferson County Child Support Office...." (Emphasis added)

This operative, paramount amended decree of divorce became final and unappealable by the passage of time and operation of law.

The testamentary trust was properly characterized as a spendthrift trust. But *TEX.FAM.CODE ANN. Sec. 14.05(c)* (Vernon 1975) provides:

"The court may order the trustees of a spendthrift or other trust to make disbursements for the support of the child to the extent the trustees are required to make payments to a beneficiary who is required to make support payments under this section. If disbursement of the assets of the trust is discretionary in the trustees, the court may order payments for the benefit of the child from the income of the trust, but not from the principal."

*TEX.FAM.CODE ANN. Sec. 14.05(a)* (Vernon 1975), entitled "Support of Child", provides:

"The court may order either or both parents to make periodic payments or a lump-sum payment, or both, for the support of the child until he is 18 years of age in the manner and to the persons specified by the court in the decree. In addition, the court may order a parent obligated to support a child to set aside property to be administered for the support of the child in the manner and by

the persons specified by the court in the decree."

### The August 31, 1984, Hearing Followed By The September 11, 1984, Judgment

On August 31, 1984, a hearing was held by the court on a motion for unpaid child support filed by Antoinette in cause No. 87,988–C. The court found the Respondent, John Henry, appeared by his attorney of record. The court further found that John Henry had not made payments as ordered in the amended divorce decree and that the sum of $25,806.32 was unpaid and owing through August 1, 1984. The court entered judgment for Antoinette in that sum whereby Antoinette became a judgment creditor and John Henry became a judgment debtor. The court also awarded attorney's fees. This judgment was dated September 11, 1984, (note: 1984) and was approved as to both form and content by both sides.

### The Collection of the Judgment Under *TEX.REV.CIV.STAT.ANN. art. 3827a* (Vernon Supp.1985)

On March 28, 1985, an Application for Collection of Judgment, under *art. 3827a,* R.C.S., was filed by Antoinette. On June 7, 1985, the Respondent-Trustees filed a reply to the application for collection of judgment under said *art. 3827a.* Then, on September 11, 1985 (note: 1985, one year after the first judgment for $25,806.32 was entered), a judgment was entered, from which this appeal is taken.

In this last proceeding in the trial court, also in cause No. 87,988–C, pursuant to *TEX.REV.CIV.STAT.ANN. art. 3827a* (Vernon Supp. 1985), now *TEX.CIV.PRAC. & REM.CODE, Sec. 31.002* (Vernon 1986), Antoinette sought, in an effective manner, to collect the judgment against her former husband only, however, from the current income of the testamentary trust. The trial was to the Bench. The same trial judge tried this proceeding who entered the judgment of September 11, 1984. In summary, the judge found facts that John Henry was an income beneficiary of the testamentary trust of Hannah Phelan. And that, pursuant to *TEX.FAM.CODE ANN. Sec. 14.-05(c),* the amended divorce decree provided that, until further order, the net income otherwise due to John Henry should be paid to the Jefferson County Child Support Office in partial satisfaction of his child support obligation. The judgment stated that the Respondents, acting as co-trustees of the said trust, did pay the Jefferson County Child Support Office the net income from the trust, which would have been due and payable to John Henry, from the date of the amended divorce decree until September 15, 1984, the date when his youngest child attained the age of 18 years; that John Henry had made no payments during this period in satisfaction of that part of the divorce decree requiring him to make payment personally (not from the spendthrift trust) and that Antoinette had obtained a judgment against John Henry in the amount of $25,806.32 for the unsatisfied portion of his child support obligations. The trial judge made conclusions of law, deciding that the Hannah C. Phelan testamentary trust was a spendthrift trust, both as to principal and income as defined in *TEX.PROP.CODE ANN. sec. 112.035* (Vernon 1984); that John Henry's beneficial interest in the trust is limited to the net income during his lifetime unless he survives Margaret Phelan and Anthony M. Phelan; that John Henry was a "judgment debtor" and that Antoinette was a "judgment creditor" within the meaning of *TEX. REV.CIV.STAT.ANN. art. 3827a* (Vernon Supp.1985), now *TEX.CIV.PRAC. & REM. CODE, Sec. 31.002* (Vernon 1986) and that Antoinette was entitled to have her full judgment satisfied from the net income of the said trust that would, otherwise, be due to John Henry, until such time as the said judgment for $25,806.32 was satisfied in full. The court then ordered the Respondents-Trustees to "pay all income distributions from the trust otherwise due John Henry Phelan III to Petitioner, beginning with the first disbursement of income after the date of entry of this judgment ... [s]uch payments shall continue until the entire amount of $25,806.32 has been delivered to Petitioner [Antoinette]".

### The Trustees

Honorable George W. Brown, Jr., and the First Security National Bank of Beaumont, Beaumont, Texas, were parties to the divorce proceeding in their capacities as joint independent executors and as trustees of the Estate of Hannah Cunningham Phelan, Deceased. The trustees contend that, under *TEX.REV.CIV.STAT.ANN. art. 3827a*, now known as *TEX.CIV.PRAC. & REM.CODE, Sec. 31.002* (Vernon 1986), they are not judgment debtors and that these statutory enactments are so designed as to allow only a judgment creditor to obtain the aid of a court of appropriate jurisdiction to reach the property (including present or future rights to property) in satisfaction of a judgment against a judgment debtor. We do not find persuasive merit in this contention. In substance, the statute was designed so that a judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction of a judgment, including present or future rights to property. We stress that Antoinette has been found, by a trial judge to be a judgment creditor against John Henry, who is the judgment debtor.

We construe both *art. 3827a* and *sec. 31.002* as providing for the substantive relief that Antoinette sought. The last judgment was entered September 11, 1985, at which time *sec. 31.002* was in effect. *Section 31.002*, entitled "Collection of Judgment Through Court Proceeding" provides methods of efficacious collections, especially when future rights to property cannot be readily attached or levied on by ordinary legal process. If necessary, the court can appoint a receiver with authority to take possession of the future property. The appointment of a receiver was obviously not necessary in the case at bar.

Appellants' major reliance on *United Bank Metro v. Plains Overseas Group*, 670 S.W.2d 281 (Tex.App.—Houston [1st Dist.] 1983, no writ), is not sound. The facts are meaningfully different and distinguishable. The old *TEX.REV.CIV.STAT. ANN. art. 3827a* was commonly known as the "turnover" statute. In *United Bank, supra*, the suit was brought against two individuals, Musslewhite and Grafton, which resulted in judgments for money damages. Also sued were Plains Overseas Group, Inc., and Plains Overseas Export, Inc. The relief sought under the "turnover statute" was that both of these corporations were merely alter egos of Musslewhite and Grafton and that these corporations were being used to conceal and transfer, in a fraudulent manner, the assets of the individual judgment debtors. The issue was the piercing of corporate veils between Musslewhite and Grafton and POGI and POEI. We simply do not have this situation here. Antoinette has a judgment directly against John Henry. *United Bank Metro* is not parallel. It is certainly not controlling. Clearly, POGI and POEI were not judgment debtors of United Bank Metro, and they had not been parties to prior litigation with United Bank Metro. The Trustees were parties to the divorce action.

Indeed, the purpose of the turnover statute has been stated as follows:

> "The traditional methods of reaching property of a judgment debtor to satisfy a judgment have been found inadequate in cases where the judgment debtor has property outside the State of Texas, where the judgment debtor owns property interests in such items as contract rights receivable, accounts receivable, commissions receivable and similar acts to property or rights to receive money at a future date." *United Bank Metro, supra.*

A well known commentator has opined that these statutes [the turnover statutes] should be liberally construed and harmonized with existing statutes and rules of procedure. Hittner, *"Texas Post-Judgment Turnover and Receivership Statutes"*, 45 Tex.Bar J. 417 (1982).

The holding of *United Bank Metro* was that courts do not disregard the corporate entity and hold individual officers, directors or stockholders liable on the obligations of a corporation except where it appears that

the individuals are using the corporate entity as a sham to perpetrate a fraud to avoid personal liability, to avoid the effect of a statute, or in a few other exceptional situations. *See Pace Corporation v. Jackson,* 155 Tex. 179, 284 S.W.2d 340, 351 (1955). There is simply no issue of piercing the corporation veil in the case subjudice.

The Appellee vigorously contends that the judgment debtor (John Henry) agreed to the arrearages recovery assessed in the judgment for unpaid child support. Further, John Henry stipulated, at the time of the divorce, that such support obligations may be satisfied by distribution directly from the Respondent-Trustees of the Hannah Cunningham Phelan Testamentary Trust for the support of the children.

We decide that the amended divorce decree, dated April 30, 1975, as well as the judgment for $25,806.32, dated September 11, 1984, amply and decisively sustain the Appellee's contentions.

 The judgment for $25,806.32 is undoubtedly a judgment for unpaid child support and the trust involved is a spendthrift trust. Nevertheless, a well-recognized exception to the spendthrift trust rule is the claim for the support of the children from the husband's trust income. This exception is based on public policy. *See* BOGERT, THE LAW OF TRUSTS AND TRUSTEES, Sec. 224 (Rev. 2d ed. 1979). To the same effect, see and compare 1 A. SCOTT, THE LAW OF TRUSTS, Sec. 157.1 (1939) reading:

"Even though ordinary contract creditors cannot reach the interest of the beneficiary of a spendthrift trust, it has been held in a number of cases that his interest can be reached by his wife or children to enforce their claims against him for support...."

See also 5 PAGE ON THE LAW OF WILLS, Sec. 44.31 (Bowe-Parker Rev.1962). On this record, we squarely hold that the net income from the spendthrift trust can be collected from the Trustees for the payment of arrearages in child support, even though the effective collection thereof may take place after the youngest child reaches his 18th birthday.

### Defenses of Collateral Estoppel and Res Adjudicata

The Trustees have argued that the affirmative defenses of collateral estoppel and res adjudicata should defeat Antoinette's claim for the arrearage of child support. We disagree. We do not find these defenses to have been pleaded by the Trustees at trial time. Indeed, it seems to us more compatible with reason and logic that the plea of res adjudicata, under this record, could have been successfully raised by Antoinette rather than the trustee-bank and the individual trustee.

There is a mention of the affirmative offense of collateral estoppel and res adjudicata set out in the Trustees' motion for new trial but those defenses were not pleaded timely, at the trial on the merits, before the district judge.

We overrule the Appellants' Points of Error based on their theories or defenses of collateral estoppel and res adjudicata.

We find no error in the record and we find ample support for the findings of fact and conclusions of law of the trial judge. We affirm the judgment below.

AFFIRMED.