IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 94-20087
No. 94-20405

_____

RESOLUTION TRUST CORPORATION as
Conservator for Heritage Federal
Savings Bank,

                    Plaintiff-Appellee,

v.

DALTON SMITH, ET AL.,

                    Defendants-Appellants.


*************************************************************


_____

No. 94-20339
No. 94-20221

_____

RESOLUTION TRUST CORPORATION as
Conservator for Heritage Federal
Savings Bank,

                    Plaintiff-Appellee,

v.

DALTON SMITH, and PATRICIA
SMITH,

                    Defendants-Appellants.


*************************************************************

_____

No. 94-20387
_____

IN RE:

RICHARD FUQUA,

Petitioner

_____

Appeals from the United States District Court
for the Southern District of Texas and Petition for Writ of
Mandamus
_____

May 11, 1995

Before KING, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

KING, Circuit Judge:

These consolidated appeals stem from the efforts of the
Resolution Trust Corporation, acting in its capacity as
conservator of Heritage Bank, to collect a judgment from Dalton
and Patricia Smith.  Shortly after the Resolution Trust
Corporation registered the judgment and noticed the Smiths'
depositions in aid of judgment, the Smiths pledged stock which
constituted a substantial portion of their assets to their
attorney, Richard Fuqua, to secure past and future legal
services.  The Resolution Trust Corporation then asked the
district court to use the Texas Turnover Statute to void the
transfer of the stock to Fuqua as a fraudulent transfer and to
command the turnover of the stock.  After a series of hearings
and orders (several of which are part of this consolidated

2

appeal), Fuqua surrendered the stock certificate to the court. The Smiths appeal, arguing that the district court's proceedings and rulings violated their due process rights and did not comport with the law interpreting the Texas Turnover Statute. Similarly, Fuqua requests that we issue a writ of mandamus compelling the district court to return the stock certificate to him. Although we reject the Smiths' contentions, we find that the district court erred in adjudicating Fuqua's rights to the stock in the turnover proceeding, and accordingly, we reverse the district court's order that declared Fuqua's security interest void.

## I. BACKGROUND

In February of 1991, the Resolution Trust Corporation, in its capacity as conservator for Heritage Federal Savings Bank, obtained a judgment of $1,292,524.07 plus interest and attorney's fees against Dalton and Patricia Smith in the Eastern District of Virginia (the "Virginia judgment"). The judgment was affirmed by the Fourth Circuit in December of that same year. A little less than two years later, on September 10, 1993, the RTC filed a registration of the judgment in the Southern District of Texas, and the RTC began collection proceedings.[1] In early October of 1993, the RTC noticed both of the Smiths's depositions in aid of judgment to take place on November 8, 1993.

---

[1] In the intervening two years, other litigation involving the RTC and the Smiths continued. See Park Club, Inc. v. Resolution Trust Corp., 967 F.2d 1053 (5th Cir. 1992).

Meanwhile, according to Fuqua, in late October of 1993, Dalton Smith sought Fuqua's representation in relation to a possible bankruptcy. Fuqua testified that he informed Smith that he was unwilling to represent Smith unless he was "collateralized to be assured of payment." Accordingly, on November 4, 1993, four days before the scheduled depositions, Smith entered into a stock pledge agreement with Fuqua, granting Fuqua a security interest in all of the Smiths' stock in Park Club, Inc. in exchange for past and future legal services. That same day, Fuqua perfected his security interest in the stock when Smith delivered the certificate for the stock to Fuqua.

The next day, November 5, 1993, the Smiths responded to the RTC's deposition notice with a motion for a protective order. The Smiths did not appear for the November 8 depositions. Also on November 5, 1993, the RTC requested a writ of execution, and in their letter requesting the writ, the RTC informed the clerk that the judgment could be satisfied in full through the levy and execution of the Park Club stock certificates. The clerk for the district court issued the writ that same day.

On November 16, 1993, the writ was served on Smith by the United States Marshal. Smith, however, did not turn over the stock certificate; rather, Smith informed the Marshal that he did not have the stock certificate. Three days later, the RTC filed an "Emergency Motion for Turnover," requesting that the district court order Smith to turn over "all stock certificates" for Park Club and other corporations.

4

The district court held a hearing on the RTC's turnover motion on December 10, 1993. At that hearing, the Smiths' counsel informed the district court and the RTC that:

> Mr. Smith, as a result of obligations he owes to another attorney, . . . has pledged . . . the Park Club stock to that attorney for substantial attorney's fees that he has incurred in connection with other representation.
>     It is my understanding that there is a perfected security interest under the UCC and possession of the stock certificates themselves in the hands of the other attorney.

Upon this revelation, the district court determined that "the thing to do is to set another hearing, get the lawyer in here, get some testimony and find out whether it was a fraudulent transfer or not, and based upon that and some other factors make a decision." The district court scheduled the hearing for January 14, 1994.

At that hearing, the district court heard the testimony of Smith and Fuqua, and on January 21, 1994, the district court granted the RTC's turnover request as to some assets, but the court did not rule on the Park Club stock. The Smiths objected to the district court's order; nevertheless, on January 24, the district court reaffirmed its ruling. The next day, the Smiths turned over most of the items in the order, but because the Smiths did not turn over all of the items included in the order, on January 26, the RTC initiated contempt proceedings against the Smiths. On January 31, 1994, the Smiths appealed the district court's January 21 and 24 orders.

On February 10, 1994, Patricia Smith was deposed in aid of judgment, but, asserting her spousal and self-incrimination privileges, she refused to answer most of the questions propounded by the RTC.

On March 15, 1994, the district court entered a memorandum opinion and an order on the Park Club stock. In its opinion, the district court, inter alia, rejected the Smiths' claim that "the Court has no jurisdiction to void the fraudulent transfer to Fuqua and order the turnover of the Park Club, Inc. stock." Instead, the district court noted that a court may order the turnover of property subject to the debtor's possession and control and that "Smith remains the record owner of the Park Club, Inc. stock that was pledged to Fuqua. Smith's control over the stock was evident from the testimony . . . ." Thus, the district court concluded that "Smith's pledge of the Park Club, Inc. stock to Michael [sic] Fuqua is void" and ordered that "the Park Club, Inc. stock be turned over to the Receiver." Additionally, the district court awarded the RTC attorney's fees.

On the same day that its memorandum opinion was entered, the district court also denied Patricia Smith's assertions of privilege and ordered her to answer the RTC's questions. Additionally, the district court ordered the Smiths to show cause why they should not be held in contempt for their failure to comply with the January 21 and 24 turnover orders. Eight days later, on March 23, 1994, the Smiths appealed the district court's March 15 order commanding the turnover of the Park Club

6

stock and the district court's March 16 order compelling Patricia Smith to answer the RTC's questions at deposition.

On April 15, 1994, the district court amended its March 15 order, once again noting that the "pledge of Park Club, Inc. stock to Richard Fuqua by Dalton Smith is void" and commanding the turnover of the Park Club stock.  Additionally, the district court reaffirmed its award of attorney's fees to the RTC.  One week later, the Smiths appealed the April 15 amended order.

By April 26, the Park Club stock still had not been turned over, and after a hearing, the district court ordered Fuqua to show cause why he should not be required to turn over the Park Club stock.  A hearing on the show cause order was held on May 6, 1994, and Fuqua was ordered to turn over the Park Club stock. Fuqua complied with the district court's order, and ten days later, the district court entered another order directing the United States Marshal to execute and sell the Park Club stock on June 7, 1994.  The Smiths also appealed that order, and Fuqua sought a writ of mandamus seeking the return of the Park Club stock.  Subsequently, we granted a stay of the sale of the stock, and we consolidated the various appeals and the mandamus request.


II.  DISCUSSION

A.  Jurisdiction

Initially, the Smiths contend that their January 31, 1994 appeal of the district court's January 21 and January 24 orders divested the district court of jurisdiction over matters

7

involving the turnover of assets.  These appeals, the Smiths contend, left this court with "the exclusive jurisdiction to decide whether the RTC was entitled to any turnover relief regarding the assets discussed at the January 14, 1994 summary hearing and whether the breadth and scope of the command to turnover all `other corporate documents' was enforceable."  We disagree.

As the Smiths contend, we have noted that "notice of appeal typically divests the district court of jurisdiction."  Alberti v. Klevenhagen, 46 F.3d 1347, 1358 (5th Cir. 1995); accord Farmhand, Inc. v. Anel Eng'g Indus., 693 F.2d 1140, 1145 (5th Cir. 1982).  This does not describe the full situation, however, as we also have stated that notwithstanding an appeal a "district court maintains jurisdiction as to matters not involved in the appeal."  Farmhand, 693 F.2d at 1145; accord Alberti, 46 F.3d at 1358.  Additionally, "[t]he district court maintains jurisdiction for other matters, such as ordering stays or modifying injunctive relief."  Farmhand, 693 F.2d at 1145-46; accord Alberti, 46 F.3d at 1358.  Finally, as we recently reemphasized, a district court has continuing jurisdiction in support of its judgment, and "`[u]ntil the judgment has been properly stayed or superseded, the district court may enforce it through contempt sanctions.'"  Alberti, 46 F.3d at 1358 (quoting United States v. Revie, 834 F.2d 1198, 1205 (5th Cir. 1987), cert. denied, 487 U.S. 1205 (1988)).

8

In the instant case, the Smiths argue that their January 31 appeal nullified the district court's ability to issue subsequent orders. This is not the case. The district court's subsequent orders were either not part of the initial appeal or orders enforcing its judgment. Accordingly, these orders were well within the district court's jurisdiction. The orders issued after the Smiths' various other appeals were of a similar posture, and accordingly, we find that the district court retained jurisdiction to enter the subsequent orders in support of its prior determinations.[2]

---

[2] A different and more difficult question arises as to this court's jurisdiction over the initial appeals. As the Seventh Circuit noted, in a similar case:

> The final-decision rule (28 U.S.C. § 1291) postpones appeal to the final judgment -- but what about orders issued after the final judgment? There is no problem when the post-judgment order concludes a discrete, collateral proceeding, such as a proceeding to award attorney's fees for services rendered before the entry of the final judgment. The fee award is the final order in the collateral proceeding and is therefore appealable. But what of a proceeding to execute or otherwise enforce a judgment? That proceeding ends when the defendant's assets are seized and sold to pay the judgment -- when in short the judgment is finally executed. But the execution is not an order. If execution is resisted, a series of orders may have to be issued before it is finally accomplished. Which of those orders are appealable?

Resolution Trust Corp. v. Ruggiero, 994 F.2d 1221, 1224 (7th Cir. 1993). We have not answered this difficult question in this circuit, and we do not reach it in this case. In the instant case, the district court's last order commanding the turnover is clearly appealable. Section 1292(a)(2) grants appellate courts jurisdiction of orders "appointing receivers . . . or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." 28 U.S.C. 1292(a)(2); see also Swint v. Chambers County Comm'n, 115 S. Ct. 1203, 1208-1212 (1995) (discussing appellate court jurisdiction).

B.    Application of the Texas Turnover Statute.

The heart of these consolidated appeals is the district court's application of the Texas Turnover Statute.[3]  As the Texas Supreme Court has described, that statute is "the procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process."  Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 224 (Tex. 1991).   Further, the Texas Supreme Court has noted that "[t]he purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control."  Id. at 227; accord Republic Ins. Co. v. Millard, 825 S.W.2d 780, 783 (Tex. App. 1992, no writ).  Through the turnover statute, a court may use an "injunction or other means in order to reach property to obtain satisfaction of a judgment, including present or future rights to property."  First City Nat'l Bank v. Phelan, 718 S.W.2d 402, 405 (Tex. App. 1986, writ ref'd n.r.e.).

---

[3]    In part, the statute provides that:

A judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that:

    (1) cannot readily be attached or levied on by ordinary legal process; and

    (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a).

10

The effect of the statute is not unlimited, however, for "the turnover statute is purely procedural in nature; the statute does not provide for the determination of the substantive rights of the parties." Cross, Kieschnick & Co. v. Johnston, 892 S.W.2d 435, 439 (Tex. App. 1994, no writ); accord Republic Ins. Co., 825 S.W.2d at 783; Cravens, Dargan & Co. v. Peyton L. Travers Co., 770 S.W.2d 573, 576 (Tex. App. 1989, writ denied). Additionally, "Texas courts do not apply the turnover statute to non-judgment debtors." Beaumont Bank, 806 S.W.2d at 227; accord Cross, Kieschnick & Co., 892 S.W.2d at 439; Republic Ins. Co., 825 S.W.2d at 783; United Bank Metro v. Plains Overseas Group, 670 S.W.2d 281, 283 (Tex. App. 1983, writ ref'd n.r.e.).

1. Application to the Smiths

Initially, the Smiths allege that the district court erred in granting the transfer motion, because, according to the Smiths, "the RTC did not show that other legal process could not be readily used to collect the Virginia judgment." This contention is unfounded.

Texas courts have noted that "[t]he Turnover Statute only requires that non-exempt property cannot be readily attached." Childre v. Great Southwest Life Ins. Co., 700 S.W.2d 284, 288 (Tex. App. 1985, no writ). Neither the statute nor the case law provides a corresponding requirement that the judgment creditor demonstrate that other methods of collecting the judgment have failed. See Hennigan v. Hennigan, 666 S.W.2d 322, 323 (Tex. App.

11

1984, writ ref'd n.r.e.) (rejecting the argument that the former version of the turnover statute requires a judgment creditor to "`first exhaust his legal remedies of attachment, execution, garnishment, etc., prior to seeking relief'"). In the instant case, the district court determined that the Smiths' interest in the various assets could not be readily attached, and we find no error in that conclusion.

Next, the Smiths' allege a variety of errors surrounding the district court's determination of their rights in the Park Club stock. These claims are also without merit. As noted above, the Texas Turnover Statute cannot be used to determine a party's substantive rights. See Cross, Kieschnick & Co., 892 S.W.2d at 439; Republic Ins. Co., 825 S.W.2d at 783; Cravens, Dargan & Co., 770 S.W.2d at 576. In the instant case, however, the district court did not violate the law surrounding the turnover statute as far as the Smiths' interest in the stock was concerned.

The turnover statute allows the court to reach the assets owned and subject to the control of a judgment debtor, even if those assets are in the hands of a third party. Norsul Oil & Mining v. Commercial Equipment Leasing Co., 703 S.W.2d 345, 349 (Tex. App. 1985, no writ); see also Beaumont Bank, 806 S.W.2d at 227 (noting that the turnover statute's purpose is to determine whether an "asset is in the possession of the judgment debtor or subject to the debtor's control" (emphasis added)).

Texas courts have applied the turnover statute to a wide variety of property, including property which the judgment debtor

12

did not own outright.  See, e.g., Daniels v. Pecan Valley Ranch, 831 S.W.2d 372, 375 (Tex. App. 1992, writ denied) (finding that the turnover statute may be used to reach payments from an annuity), cert. denied, 113 S. Ct. 2944 (1993); Ross v. 3D Tower Ltd., 824 S.W.2d 270, 272 (Tex. App. 1992, writ denied) (applying the statute to "attorney's accounts receivable of present, future, or unearned fees"); Cain v. Cain, 746 S.W.2d 861, 863 (Tex. App. 1988, writ denied) (noting that the turnover statute could be used to reach military retirement pay); First City Nat'l Bank, 718 F.2d at 405-06 (upholding the use of the turnover statute to reach future payments from a testamentary trust); Matrix, Inc. V. Provident American Ins. Co., 658 S.W.2d 665, 668 (Tex. App. 1983, no writ) (finding that the turnover statute could be used to reach a promissory note).  All of those cases comply with the Texas Supreme Court's observation that, in a turnover proceeding, a court properly may "order the debtor to turn over as much of the [property] as is in the possession or control of the debtor."  Beaumont Bank, 806 S.W.2d at 227.  Thus, in the instant case, the turnover proceeding was a proper vehicle to reach the assets in the possession or control of the Smiths.

There is no dispute that, although their interest was encumbered by the pledge agreement to Fuqua, the Smiths continued to own the Park Club stock.  Under the pledge agreement between Smith and Fuqua, Smith retained full voting rights attributable to the stock and Smith's only limitation in his ability to dispose of the stock was the requirement of Fuqua's written

13

consent to a sale.  In light of the pledge agreement and Fuqua's testimony, the district court determined that Smith retained control of the Park Club stock, and we find no error in this conclusion.  It is clear that the district court did not err in using the turnover statute to order the Smiths to turn over whatever interest they had in the Park Club stock to the district court.

The Smiths also argue that ordering the turnover of the Park Club stock violates the open courts doctrine.  Specifically, the Smiths contend that because Park Club owns a judgment against the RTC, obtained by Smith and Park Club in separate litigation, turn over of the Smiths' interest in the Park Club stock will eliminate their ability to collect that judgment.  This argument is insupportable.  The open courts doctrine, embodied in the Texas Constitution, "provides a litigant a specific guaranty of a right of access to the courts."  Criswell v. Ginsberg & Foreman, 843 S.W.2d 304, 306 (Tex. App. 1992, no writ).  Under this doctrine, there is authority that a cause of action is not amenable to a turnover order.  Id.  That, however, is not the situation in the instant case.  Here, the turnover order is applied only to stock; no cause of action waiting for adjudication is implicated.  The judgment owned by Park Club is merely an asset of the company which should be reflected in the value of its stock.

The Smiths raise two other issues in their appeal, both of which can be disposed of easily.  In response to the district

14

court's order, Patricia Smith testified on April 11, 1994. The Smiths contend that the court erred in ordering the testimony over Patricia Smith's asserted spousal and Fifth Amendment privileges. Specifically, the Smiths argue that "[t]he district court's adoption of the RTC's aggressive pressure on Patricia Smith demonstrates that constitutional and statutory rights and fundamental fairness were inferior to the RTC's improper motive to gain control over the Park Club, Inc. stock." It is unclear precisely what the Smiths complain about, but we will not reverse a district court's evidentiary rulings unless they are erroneous and substantial prejudice results. The burden of proving substantial prejudice lies with the party asserting error. FDIC v. Mijalis, 15 F.3d 1314, 1318-19 (5th Cir. 1994). Patricia Smith has already testified, and the Smiths fail to allege prejudice resulting from the court's decision requiring Patricia Smith to testify. Accordingly, we reject the Smiths' claim of error.

The Smiths also argue that the district court erred in awarding attorney's fees in conjunction with the turnover because the turnover order itself was improper. Since we find that the district court did not err in its turnover order as it applied to the Smiths, we reject this contention.


2.   Application to Fuqua


15

The district court's order voiding the pledge to Fuqua, however, presents a different situation.  After the December 10, 1993 hearing, when the pledge agreement was revealed, the RTC altered its motion for turnover and requested that the district court "declare that the pledge of the Park Club, Inc. stock to Fuqua [is] void."  As noted above, after a hearing in which Fuqua testified, the district court accepted the RTC's invitation and declared that, "Smith's pledge of Park Club, Inc. stock to [Richard] Fuqua is void."  This was error.[4]

There is little doubt that the Texas turnover statute cannot be used to litigate the property rights of third parties.  See, e.g., Republic Ins. Co., 825 S.W.2d at 783.  Applying this rule, the Texas Supreme Court recently stated that the turnover statute could not be used to reach a judgment debtor in her individual capacity when a judgment imposed liability on that individual in her capacity as representative of an estate.  Beaumont Bank, 806

---

[4]  We are sympathetic to the district court's position in this case, since it appears that the court was led down the primrose path by the RTC.  As noted above, in proceedings before the district court, the RTC vigorously argued that the district court should declare the stock pledge void.  At oral argument before this court, however, the RTC took a different tack, stating that "to the extent that the judge voided the . . . obvious fraudulent transfer, she just didn't have the jurisdiction to do it."  We recognize that the Smiths' pledge of the Park Club stock to Fuqua may have been, at a minimum, highly suspect.  Regardless of the propriety of that transaction, however, we cannot condone the tack taken by counsel for the RTC with the district court.  Many of the problems of this appeal (and a great deal of public and private expense) could have been avoided had the RTC done a more careful job in the district court.

S.W.2d at 227. Similarly, a Texas appellate court concluded that it was improper to use the turnover statute to reach the assets of corporations which were allegedly alter-egos of the judgment debtors without a separate proceeding that pierced the corporate veil. United Bank Metro, 670 S.W.2d at 284 (cited with approval in Beaumont Bank, 806 S.W.2d at 227); see also Cravens, Dargan & Co., 770 S.W.2d at 576 (holding that the turnover statute could not be used to reach funds deposited with state agency when the rights to the funds would be contested because the turnover statute could not be used "to determine the ownership of the deposited funds"). A proceeding to determine whether a transaction is fraudulent or otherwise to determine property rights of the parties is improper under the turnover statute, for the statute "does not allow for a determination of the substantive rights of involved parties." Republic Ins., 825 S.W.2d at 783; see also United Bank Metro, 670 S.W.2d at 284. It is even more clear that a party not even before the court cannot have its rights determined via the turnover proceeding. Thus, in this case, the district court erred in using the turnover proceeding to determine that the stock pledge was a fraudulent transfer and was therefore void. The validity of the pledge agreement must be challenged in a further proceeding. And the sale of the Park Club stock must await a determination satisfactory to the district court of the validity of Fuqua's interest.

Fuqua's petition for a writ of mandamus is denied as moot insofar as it seeks an order rescinding the district court's determination that the pledge was void. Fuqua's petition also seeks the return of the certificate evidencing the Park Club stock. We are not persuaded that leaving the certificate in the registry of the district court until the validity of Fuqua's interest in the stock is determined will impair whatever interest Fuqua has in the stock. Accordingly, we deny Fuqua's petition to the extent that it seeks the return of the certificate evidencing the Park Club stock.

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's orders insofar as they voided the pledge agreement and ordered the sale of the Park Club stock. We AFFIRM the district court's orders in all other respects, including the orders compelling the Smiths to turnover their interest in the Park Club stock and other assets. We DENY Fuqua's petition for a writ of mandamus. Each party shall bear its own costs.