In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-14-00313-CV**
_____

**ALEXANDER DUBOSE JEFFERSON & TOWNSEND LLP, Appellant**

**V.**

**CHEVRON PHILLIPS CHEMICAL COMPANY LP, Appellee**

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 05-03-02662-CV**

**OPINION**

This appeal is before us on remand from the Texas Supreme Court. *See*

*Alexander, Dubose, Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., and*

*Kingwood Crossroads, L.P.*, 503 S.W.3d 1 (Tex. App.—Beaumont 2016), *rev'd and*

*remanded*, 540 S.W.3d 577 (Tex. 2018). Alexander Dubose Jefferson & Townsend,

LLP ("Alexander Dubose") appeals the trial court's June 9, 2014, "Order and Final

Judgment on Pending Matters" (the "Release Order").

1

We set out the lengthy and complex factual and procedural background of this case in our previous opinion. *See Alexander, Dubose, Jefferson & Townsend LLP*, 503 S.W.3d at 2–4. Accordingly, we recite only facts pertinent to the resolution of the issues currently before us. Alexander Dubose presents three issues on appeal. First, once the sanctions judgment against Exxon became final, did the rights of contingent-fee counsel Alexander Dubose, as owner of one-half the amount of that judgment, become fixed, thereby entitling Alexander Dubose to the $494,427.32 plus interest on deposit in the registry of the trial court? Second, does Alexander Dubose have a contractual security interest that is superior to CP Chem's judgment-creditor lien? Finally, does Alexander Dubose have an attorney's lien that is superior to CP Chem's judgment-creditor lien?

To decide this matter, we must first address whether the Release Order entered in a turnover proceeding was proper. Based on our review of the record, we reverse the trial court's judgment as contained in the Release Order and remand for further proceedings consistent with this opinion.

## I. Factual and Procedural Background

Alexander Dubose was one of several law firms representing Kingwood Crossroads, Inc. ("Kingwood") in the underlying litigation in addition to Mayer

2

Brown LLP ("Mayer Brown").[1] The defendants in the underlying litigation included First American Title Insurance Company, Chevron Phillips Chemical Company, L.P. ("CP Chem"), Exxon Land Development, Inc. ("Exxon Land"), and Kingwood Place West Community Association, Inc. The underlying litigation involved a failed real estate transaction. *See id.* The jury returned a verdict in favor of Kingwood. In addition to a monetary award for damages and attorneys' fees by the jury, the trial court awarded sanctions to Kingwood assessed against Exxon Land and arising from an electronic discovery dispute. The sanctions award equaled the amount of attorneys' fees incurred by Kingwood during the discovery dispute, which was $637,612.50, for "violations of the Court's orders and the Texas Rules of Civil Procedure." At trial, Exxon Land stipulated the fees were reasonable but did not stipulate to the merits of the sanctions award.

Kingwood entered into an Alternate Fee Agreement (AFA) with trial counsel Mayer Brown in October of 2006. The AFA specifically addressed the sanctions award from Exxon Land. It provided as follows:

> (i)     Any award of fees and expenses ordered by the Court against Exxon as a result of Kingwood CrossRoads' Motion for Sanctions shall be paid 50% to Kingwood CrossRoads and 50% to MBR&M which

---

[1] The law firm of Mayer Brown was formerly known as Mayer Brown Rowe & Maw LLP. It is referred to in the alternate fee agreement as "MBR&M" and in the supplement to the alternate fee agreement as "MB."

3

payment to MBR&M shall be credited dollar-for-dollar against the outstanding balance of the Alternate Fee.

On August 12, 2008, Kingwood, Mayer Brown, and Alexander Dubose executed a Supplement to Alternate Fee Agreement ("SAFA") in which Alexander Dubose agreed to join the representation of Kingwood. The SAFA likewise addressed the sanctions award against Exxon Land, referencing the specific Exxon sanctions provision contained in 2(i) of the original AFA, and provided:

> 4. In the event MB is entitled to recover fees and expenses under paragraphs 2(i) or 2(g) of the Alternate Fee Agreement, MB agrees that the first dollars otherwise payable to MB under the Alternate Fee Agreement shall be paid to ADJT until ADJT has recovered the balance of its fee under paragraph 2 hereof; with the remainder to be paid to MB (for the avoidance of doubt, there will be no duplication of payment of any fee to MB and ADJT).

On May 26, 2011, the Fourteenth Court of Appeals affirmed the sanctions award against Exxon Land and the award of attorneys' fees to Kingwood for defense of CP Chem's counter-claim for breach of contract, but it reversed the remainder of the trial court's judgment. *See Chevron Phillips Chem. Co. v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 78 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The issue of attorneys' fees incurred by Kingwood in defense of CP Chem's breach of contract counterclaim was severed and remanded to the trial court to be determined after segregation. *See id.* at 70, 78. The Fourteenth Court of Appeals affirmed the award of attorneys' fees in the amount of $1,200,000.00 to CP Chem as the

4

prevailing party in the contract action. *See id.* at 78. The Texas Supreme Court denied a petition for review of the underlying litigation and sanctions award. *Kingwood Crossroads, L.P. v. Chevron Phillips Chem. Co., Exxon Land Dev., Inc., and Kingwood Place West Cmty. Ass'n, Inc.,* 2013 Tex. LEXIS 109 (Tex. Feb. 15, 2013).

On May 29, 2013, following the Supreme Court's denial of the petition for review, Exxon Land paid the sanctions award plus accrued interest, which by then totaled $988,854.64. The payment was made to "MAYER BROWN AS TRUSTEE FOR KINGWOOD CROSSROADS LP[.]" Mayer Brown deposited the funds in its IOLTA account.

Thereafter, on June 13, 2013, CP Chem filed an application for turnover of the funds held in Mayer Brown's IOLTA account attempting to reach non-exempt assets of Kingwood and alleging Kingwood's sanctions recovery from Exxon Land was subject to turnover. Alexander Dubose then filed a petition for intervention and request for declaratory judgment asserting it did so "to protect its interest in funds paid by [Exxon Land] in satisfaction of the sanctions order issued by this Court and affirmed by the Fourteenth Court of Appeals[.]" In the trial court, Alexander Dubose advanced several arguments in support of its superior right to the funds paid by Exxon Land in satisfaction of the sanctions judgment, which included: (1) after the

5

judgment became final, they owned a portion of the award pursuant to the contingent fee agreement; and alternatively, (2) Alexander Dubose had a contractual claim to the funds which had priority over the claims of CP Chem. On November 8, 2013, the trial court signed an order (the Turnover Order) that, in part, directed Kingwood to turn over half of the funds directly to CPChem and the other half to be placed in the court's registry. The Turnover Order concluded by saying the "Turnover Order is without prejudice to any right of either CPChem or ADJT to seek the release of the $494,427.32 to be held initially in the Court's Registry." It was silent as to ADJT's intervention and request for a declaration, as well as CPChem's motion to strike. When Alexander Dubose sought release of the remainder of the funds in the court's registry, CP Chem filed a motion to enforce the turnover order to seek recovery of the balance of the funds in the court's registry. On June 9, 2014, the trial court signed the "Order and Final Judgment on Pending Matters" (the Release Order). In the Release Order, the trial court denied the relief requested by Alexander Dubose in its petition in intervention, granted CP Chem's motion to enforce the turnover order and for release of funds in the court's registry, and ordered the remaining funds in the court's registry released to CP Chem.

## II. Standard of Review

We review a turnover order for an abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (citing *Buttles v. Navarro*, 766 S.W.2d 893 (Tex. App.—San Antonio 1989, no writ; *Sloan v. Douglass*, 713 S.W.2d 436 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.; *Barlow v. Lane*, 745 S.W.2d 451 (Tex. App.—Waco 1988, writ denied)). In so doing, we determine whether the trial court acted without reference to any guiding rules and principles or whether it acted unreasonably or arbitrarily. *See id.*; *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). "In the context of turnover orders, it has been held that a trial court's issuance of a turnover order, even if predicated on an erroneous conclusion of law, will not be reversed for abuse of discretion if the judgment is sustainable for any reason." *Buller*, 806 S.W.2d at 226 (citing *Buttles*, 766 S.W.2d at 894–95).

## III. Analysis

In the present case, in the trial court and on appeal, Alexander Dubose argued CP Chem had no right to a turnover order as to 50% of those funds, "because CP Chem had asserted no claims against [Alexander Dubose] and [Alexander Dubose] was not a judgment debtor." In its brief, Alexander Dubose asserts the trial court was incorrect on both grounds used as the basis to issue the turnover order. They further

contend CP Chem is not a judgment creditor of Alexander Dubose, and thus, CP Chem is not entitled to obtain turnover of funds which Alexander Dubose owns. They also point out that the property rights of ADJT as a non-judgment debtor were at issue. CP Chem argues on appeal "[a]ll the claims in [Alexander Dubose's] purported intervention were decided by the turnover order." Therefore, we must first determine whether the trial court's Release Order issued in a turnover proceeding was proper when it affected the property rights of Alexander Dubose, who was not a judgment debtor of CP Chem nor a party to the underlying litigation.

The Turnover Order ordered, in part, that one-half of the funds being held by Mayer Brown in its IOLTA Account, representing the sums paid by Exxon Land Development, Inc. to Kingwood as discovery sanctions in the underlying lawsuit, be paid directly to CP Chem.[2] The Turnover Order ordered the other one-half of the funds being held by Mayer Brown in its IOLTA Account to be deposited into the registry of the court, pending final adjudication of Alexander Dubose's substantive

---

[2]The portion of the undisputed funds ordered paid directly to CP Chem under the initial Turnover Order was "clearly in the nature of a mandatory injunction because it required the judgment debtor, Kingwood, to deliver the funds directly to the judgment creditor, CP Chem." Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chemical Company, L.P., 540 S.W.3d 577, 587 (Tex. 2018) (citing Whatley v. King, 249 S.W.2d 57, 58 (Tex. 1952); Kennedy v. Hudnall, 249 S.W.3d 520, 524 (Tex. App.—Texarkana 2008, no pet.); Pilot Eng'g Co. v. Robinson, 470 S.W.2d 311, 312 (Tex. Civ. App.—Waco 1971, no writ)). No party filed an appeal to this portion of the trial court's order.

8

claims to the funds. Because this portion of the Turnover Order did not attempt to adjudicate any substantive claims to the disputed funds, it was not a final, appealable judgment. *Alexander Dubose*, 540 S.W.3d at 586. Thus, Alexander Dubose appealed from the trial court's Release Order. The trial court ordered the disputed funds held in the court's registry to be disbursed to CP Chem in the Release Order, determining the outcome of competing substantive claims. *Id.* at 586, 588. The trial court, however, reached the merits of Alexander Dubose's claim to the funds within the context of a turnover proceeding, in violation of the purpose of turnover proceedings as explained by the Texas Supreme Court in *Alexander Dubose*. *Id*. at 584.

## A. Turnover Law

A judgment creditor may seek the court's assistance in reaching property owned by a judgment debtor. Tex. Civ. Prac. & Rem. Code Ann. § 31.002 (West Supp. 2018). The turnover statute provides,

> [a] judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that is not exempt from attachment, execution, or seizure for the satisfaction of liabilities.

*Id.* § 31.002(a). The statute specifies a judgment creditor is entitled to the trial court's aid "*if* the judgment debtor *owns* property[.]" *Id.* (emphasis added); *Alexander Dubose*, 540 S.W.3d at 581. The statute further states, "[t]he court may: (1) order

9

the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control. . . ." Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b).

> To obtain relief under the turnover statute, a judgment creditor must prove: (1) the judgment debtor owns property, including present or future rights to property; (2) the property is not exempt from attachment, execution, or seizure; and (3) the property "cannot readily be attached or levied on or by ordinary legal process."

*Black v. Shor*, 443 S.W.3d 170, 175 (Tex. App.—Corpus Christi 2013, pet. denied) (quoting former version of Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a)); *see also Oxbow Calcining LLC v. Port Arthur Steam Energy, L.P.*, Nos. 09-18-00359-CV, 09-18-00392-CV, 2018 WL 6542555, at *1 n.1 (Tex. App.—Beaumont Dec. 13, 2018, no pet.) (mem. op.).

The Texas turnover statute operates as a procedural device to assist judgment creditors in obtaining satisfaction of their judgments. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002; *see also Alexander Dubose*, 540 S.W.3d at 581. The turnover statute is purely procedural in nature. *See Buller*, 806 S.W.2d at 227 ("The purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control."); *Oxbow Calcining LLC*, 2018 WL 6542555, at *1 n.1 ("A 'turnover' order is a statutory procedural device[.]"); *In re Old Am. Cty. Mut. Fire Ins. Co.*, No. 13-14-00231-CV,

10

2014 WL 4795923, *5 (Tex. App.—Corpus Christi Sept. 25, 2014, orig. proceeding) (mem. op.) ("The turnover statute is 'purely procedural in nature.'"); *Republic Ins. Co. v. Millard*, 825 S.W.2d 780, 782 (Tex. App.—Houston [14th Dist.] 1992, orig. proceeding) (determining trial court abused its discretion by "expanding the scope of the turnover statute beyond its purpose as a purely procedural device"); *Cravens, Dargan & Co. v. Peyton L. Travers Co., Inc.*, 770 S.W.2d 573, 576–77 (Tex. App.—Houston [1st Dist.] 1989, writ denied) ("[T]he turnover statute is purely a procedural tool[.]").

## B. Split in Authority: Substantive Claims in Turnover Proceedings

Texas courts have long struggled with the question of whether substantive claims can be adjudicated in turnover proceedings. *See Maiz v. Virani*, 311 F.3d 334, 343 (5th Cir. 2002) (recognizing "uncertainty as to how aggressive trial courts can be in enforcing turnover orders which affect the rights of non-judgment debtors is reflected in the conflicting decisions of the lower Texas appellate courts"); s*ee also Alexander Dubose*, 540 S.W.3d at 584 n.37 (noting courts are troubled by how to resolve competing substantive claims to property sought in a turnover proceeding and the extent to which a turnover order can affect the rights of non-judgment debtors); *Old Am. Cty.*, 2014 WL 4795923, at *5 n.4 (*comparing Buller*, 806 S.W.2d at 226, *with Schultz v. Fifth Judicial Dist. Court of Appeals at Dall.*, 810 S.W.2d

11

738, 740 (Tex. 1991), *abrogated on other grounds, In re Shestaway*, 154 S.W.3d 114 (Tex. 2004)) (acknowledging courts have had some difficulty in construing the Texas Supreme Court's decisions regarding the application of a turnover statute to third parties). The majority of cases hold turnover proceedings cannot be used to determine the parties' substantive rights or be applied to non-judgment debtors as expressed by the Texas Supreme Court in *Beaumont Bank, N.A. v. Buller*, which relied on other appellate court opinions in reaching its conclusion. 806 S.W.2d at 227 (citing *Cravens*, 770 S.W.2d at 576; *Detox Indus., Inc. v. Gullett*, 770 S.W.2d 954, 956 (Tex. App.—Houston [1st Dist.] 1989, no writ); *United Bank Metro v. Plains Overseas Group, Inc.*, 670 S.W.2d 281, 284 (Tex. App.—Houston [1st Dist.] 1983, no writ)); *Lozano v. Lozano*, 975 S.W.2d 63, 68 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *see also Old Am. Cty.*, 2014 WL 4795923, at *5; *Parks v. Parker*, 957 S.W.2d 666, 668 (Tex. App.—Austin 1997, no pet.) (recognizing and declining to follow courts of appeals holding that where a third party retains property that is shown to be nonexempt, owned by a judgment debtor, and subject to the debtor's possession or control, the trial court may issue a turnover order *against the third party*) (citations omitted).

The general rule is that a turnover statute cannot provide relief against one who is not a judgment debtor. *See Buller*, 806 S.W.2d at 227; *Bay City Plastics, Inc.*

12

*v. McEntire*, 106 S.W.3d 321, 324 (Tex. App.—Houston [1st Dist.] 2003, pet.

denied) (citing *United Bank*, 670 S.W.2d at 283); *see also Maiz*, 311 F.3d at 336.

One Texas Supreme Court Justice explained

> [a] turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process. Otherwise, a court could simply order anyone (a bank, an insurance company, or the like) alleged to owe money to a judgment debtor to hand over cash on threat of imprisonment.

*Ex parte Swate*, 922 S.W.2d 122, 125 (Tex. 1996) (Gonzales, J., concurring); *see*

*also Elgohary v. Herrera Partners, L.P.*, No. 01-13-00193-CV, 2014 WL 2538556,

at *3 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.).

However, a minority of cases allow for substantive determinations and

reaching beyond the judgment debtor but only when the trial court makes particular

findings. *See Schultz*, 810 S.W.2d at 740 ("Upon proof of the necessary facts, it

authorizes the trial court to order affirmative action by the judgment debtor *and*

*others*[.]") (emphasis added); *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*,

948 S.W.2d 317, 324 (Tex. App.—Dallas 1997, writ denied) ("A trial court may

order a judgment debtor to turn over nonexempt property that a third party holds if

the trial court makes a factual finding that the property is subject to the possession

or control of the judgment debtor.") (citations omitted). Most of the cases indicating

a turnover proceeding can be used to reach beyond a judgment debtor require, at a

13

minimum, a finding by the trial court that the true judgment debtors are owners of the property at issue. *See Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding) ("Without a factual finding *by the trial court* that . . . the true judgment debtors[]are owners[,] . . . we are left with an order that, on its face, authorizes seizure and execution on assets of non-judgment debtors."); *Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing Co.*, 703 S.W.2d 345, 349 (Tex. App.—San Antonio 1985, no writ) (ultimately concluding judgment debtor owned the property at issue but noting that if a third party retains the property, if it is shown to be nonexempt, owned by a judgment debtor and subject to the debtors' possession or control, the trial court may issue and enforce a turnover order). The case before us is distinguishable from this minority line of cases, because the trial court never made a factual finding that the judgment debtor, Kingwood, owned the funds at issue.

## C. Post-Judgment Intervention: Effect on Substantive Claims

CP Chem makes no argument, nor can it, that Alexander Dubose is a judgment debtor. Rather, it takes the position that the money in the court's registry belonged to Kingwood, and therefore, CP Chem is entitled to turnover of the funds. CP Chem further argues that because Alexander Dubose intervened, injecting itself into the proceedings, it cannot now complain about the trial court's substantive

14

determination. We disagree. A non-party to the underlying litigation may intervene post-judgment to protect its interest in property if it does not seek to modify the underlying judgment. *Breazeale v. Casteel*, 4 S.W.3d 434, 437 (Tex. App.—Austin 1999, pet. denied) (holding intervention is not barred after the trial court has rendered final judgment where the intervenor does not attack the substance of the judgment but merely seeks to protect a property interest subject to a turnover motion). Here, Alexander Dubose sought to protect its interest in 50% of the funds and did not seek to modify the underlying judgment.

CP Chem essentially argues that by attempting to protect its interest in the funds, Alexander Dubose forfeited its right to complain about the trial court's actions. In support of its position, CP Chem cited to *Cre8 Int'l, LLC v. Rice*. No. 05-14-00377-CV, 2015 WL 3492629, at *3 (Tex. App.—Dallas June 3, 2015, no pet.) (mem. op.) ("[T]he trial court did not abuse its discretion by deciding, over [Appellant's] objection, whether the debtor 'owns and/or controls right, title and interest to' the assets in question."). The Texas Supreme Court rejected this argument noting that no courts "go as far as holding that intervention enables a court to adjudicate third-party rights in what is otherwise a purely procedural device." *See Alexander Dubose*, 540 S.W.3d at 585. If we were to agree with CP Chem's assertion, we would be determining Alexander Dubose's only options were: (1)

15

forfeit any interest it had in the funds by failing to intervene; or (2) intervene and attempt to protect their interest but forfeit any right to complain regarding a trial court's abuse of discretion. We do not believe protecting one's interest in property post-judgment by intervening in a turnover proceeding forfeits one's right to complain about a trial court's rulings on appeal, especially when a trial court "expand[s] the scope of the turnover statute beyond its purpose as a purely procedural device to assist judgment creditors in post-judgment collections." *See Republic Ins. Co.*, 825 S.W.2d at 782. If we were to conclude otherwise, a non-party to the underlying litigation holding a property interest that is under threat in a post-judgment enforcement proceeding would, in effect, be left without a remedy.

## D. Separate, Initial Proceedings

We agree with the majority of cases holding a trial court cannot determine substantive claims in a turnover proceeding, especially the claims of a non-party to the underlying litigation.[3] *See Alexander Dubose*, 540 S.W.3d at 583 (recognizing "precedent that regards turnover proceedings as being limited to their purely

---

[3] Even if we were to agree with the minority line of cases allowing for a trial court to make substantive determinations in a turnover proceeding and reach the property of a non-party to the underlying judgment, the trial court here did not make the requisite factual findings of ownership required by that line of cases. *See Plaza Court, Ltd. v. West*, 879 S.W.2d 271, 276–77 (Tex. App.—Houston [14th Dist.] 1994, orig. proceeding).

16

procedural nature and, thus, bars use of the turnover statute to determine parties' and non-judgment debtors' substantive rights") (citing *Buller*, 806 S.W.2d at 227; *Woody K. Lesikar Special Tr. v. Moon*, No. 14-10-00119-CV, 2011 WL 3447491, at *6 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, pet. denied) (mem. op.)); *In re deShetler*, No. 09-17-00031-CV, 2017 WL 1173811, at *4 (Tex. App.—Beaumont Mar. 30, 2017, orig. proceeding) (mem. op.). We look to the language of section 31.002, which comports with this holding. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002; *see also Parks*, 957 S.W.2d at 668. By statute, a judgment creditor is entitled to aid *if* the judgment debtor owns property; then, the trial court may reach property the judgment debtor possesses or controls. *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a), (b) (emphasis added); *Buller*, 806 S.W.2d at 227; *Parks*, 957 S.W.2d at 670.

We recognize questions of ownership regularly arise in post-judgment enforcement proceedings as they have here. Accordingly, we conclude a trial court must hold separate, initial proceedings adjudicating competing claims of ownership before and apart from the issuance of a turnover order. *See, e.g., United Bank*, 670 S.W.2d at 284 (concluding creditor with judgment against it was not entitled to turnover against corporation until creditor pierced corporate veil in separate proceeding); *Steenland v. Tex. Commerce Bank Nat'l Ass'n*, 648 S.W.2d 387, 390–

17

91 (Tex. App.—Tyler 1983, writ ref'd n.r.e.) (determining turnover statute does not authorize appointment of receiver to reach homestead's non-exempt excess value until substantive issues are established in separate proceeding brought for that purpose). We believe this solution affords due process to non-parties who intervene post-judgment to protect their property interests, while precluding the trial court from expanding the turnover procedure beyond its purely procedural nature. *See Republic Ins. Co.*, 825 S.W.2d at 782. By conducting initial, separate proceedings on claims of competing ownership, a trial court's resolution will be distinct from the turnover proceeding. This is consistent with the turnover statute and long-standing precedent holding the parties' and non-judgment debtors' substantive rights cannot be adjudicated in a turnover proceeding. *See Alexander Dubose*, 540 S.W.3d at 583 (recognizing precedent holding substantive rights cannot be adjudicated in a turnover proceeding); *Buller*, 806 S.W.2d at 227; *Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 438 (Tex. App.—San Antonio 1994, no writ); *Cravens*, 770 S.W.2d at 576–77; *Detox Indus., Inc.*, 770 S.W.2d at 957–58; *United Bank*, 670 S.W.2d at 283; *see also Resolution Tr. Corp. v. Smith*, 53 F.3d 72, 79–80 (5th Cir. 1995). Indeed,

> [a] number of other courts have also concluded that a turnover order is not a shortcut to bypass proceedings that afford third parties due process. They have come to the conclusion that the turnover statute is a purely procedural mechanism to aid in collecting judgment, but does

18

> not provide a substitute for other proceedings to adjudicate the substantive rights of third parties.

*Swate*, 922 S.W.2d at 125 (citations omitted) (Gonzalez, J., concurring). "[A] creditor may not seek a turnover order against third parties without other initial proceedings." *Id.*; *deShetler*, 2017 WL 1173811, at *4.

In the face of competing ownership claims, without holding an initial, separate proceeding to determine ownership, a judgment creditor seeking turnover cannot meet the first element the statute requires, which is to show "the judgment debtor owns [the] property, including present or future rights to property[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a); *Old Am. Cty.*, 2014 WL 4795923, at *5. "A turnover order is proper if the conditions of the statute are met." *Old Am. Cty.*, 2014 WL 4795923, at *5. Therefore, it logically follows that a turnover order is not proper if the conditions of the statute are not met. It is the judgment creditor's burden to show that the judgment debtor, owns, possesses, or controls the property. *HSM Dev., Inc. v. Barclay Props., Ltd.*, 392 S.W.3d 749, 751 (Tex. App.—Dallas 2012, no pet.). Requiring the adjudication of those claims first and separately affords non-parties the due process rights our system demands. *See Swate*, 922 S.W.2d at 125 (Gonzalez, J., concurring) ("A turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process."). This further helps to ensure that trial courts issue turnover

orders only against judgment debtors and property they own. A trial court cannot summarily deny competing substantive ownership claims following a turnover hearing.[4] *See id.* Yet, that is exactly what happened. In so doing, the trial court allowed CP Chem to "bypass[ ] our system of affording due process." *See id.*

There remains an outstanding factual dispute regarding ownership of the funds which was never properly determined by a trial court. As an appellate court, we are not permitted to make factual determinations. "This Court is not a fact-finder, and we may not decide factual disputes." *Plaza Court, Ltd.*, 879 S.W.2d at 276.

In light of the competing ownership claims to the funds, the trial court abused its discretion in ordering turnover of those funds without first conducting separate, initial proceedings to resolve those claims and adjudicating the non-judgment debtor's claims. *Cf. Alexander Dubose*, 540 S.W.3d at 583 ("[I]t is worth noting that there was never a separate, initial proceeding adjudicating [the non-judgment debtor's] claims."). By failing to first determine ownership of the funds in separate proceedings, the trial court's Release Order permitted CP Chem to reach property when it had not met the requirements of the turnover statute, specifically that the property was owned by the judgment debtor. Accordingly, we do not reach the issues

---

[4] The mere participation of Alexander Dubose's counsel at the turnover application hearing does not rise to the level of "separate, initial proceedings."

of ownership as framed by Alexander Dubose, as those claims have never been properly considered by a trial court.

## IV. Conclusion

The trial court abused its discretion when it entered the Release Order requiring payment of the remaining disputed funds in the court's registry to CP Chem without first adjudicating the claims of ownership by the non-judgment debtor in a separate, initial proceeding. We therefore reverse the trial court's Order and Final Judgment on Pending Matters of June 9, 2014, and remand to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

_____
CHARLES KREGER
Justice

Submitted on March 27, 2018
Opinion Delivered March 14, 2019

Before Kreger, Horton, and Johnson, JJ.

21