**WORLD FUEL SERVICES CORPORATION
Plaintiff,**

v.

**Donald F. MOOREHEAD,
Jr. Defendant.**

**No. 3–01–MC–082L.**

United States District Court,
N.D. Texas.
Dallas Division.

May 14, 2002.

Jay H Solowsky, Attorney at Law, Pertnoy Solowsky Allen & Haber, Miami, FL, Paul Scott Leslie, Attorney at Law, Stacy R Obenhaus, Attorney at Law, Dallas, TX, for World Fuel Services Corporation, a Florida corporation, plaintiff.

Weldon L Moore, III, Attorney at Law, L E Creel, III, Attorney at Law, Creel Sussman & Moore, Dallas, TX, Gary C Rosen, Attorney at Law, Becker & Poliakoff, Fort Lauderdale, FL, for Donald Moorehead, Jr, defendant.

## *ORDER*

LINDSAY, District Judge.

Before the court are Findings and Recommendation of the United States Magistrate Judge ("Report"), filed February 27, 2002; Plaintiff's Objections to Magistrate's Report, filed March 12, 2002; and Defendant's Objections to Magistrate Judge Kaplan's Findings and Recommendation as to Turnover Relief, filed March 13, 2002. After making an independent review of Plaintiff's amended application for turnover order, application for charging order, briefs in support thereof, Defendant's response, the record evidence and applicable law, the court concludes that the findings

and conclusions of the magistrate judge are correct.

Defendant Donald F. Moorehead, Jr. ("Defendant") makes a number of objections to the magistrate judge's Report. His first four objections are interrelated and question Plaintiff's entitlement to turnover relief. Defendant's fifth and sixth objections question the propriety of appointing a receiver in this case. Plaintiff's sole objection is that the Report does not include a finding or recommendation with respect to the receiver's authority to vote shares in Defendant's nonexempt assets and property interests. The court addresses these objections in turn.

Defendant contends that the magistrate judge erred in finding that Plaintiff is entitled to relief under the Texas Turnover Statute because Plaintiff has not satisfied the requirements necessary for relief. In particular, Defendant contends that Plaintiff has failed to show (1) that the pledged assets identified in the magistrate judge's Report are in his (Defendant's) possession or control, and (2) that the assets cannot be readily attached or levied on by ordinary legal process. The court disagrees.

The Texas Turnover Statute is a procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process. Tex. Civ. Prac & Rem.Code Ann. § 31.002(a) (Vernon 1997 & Supp.2002); *Beaumont Bank N.A. v. Buller*, 806 S.W.2d 223, 224 (Tex.1991). To be entitled to relief under the statute, a judgment creditor need only show that the judgment debtor owns nonexempt property that is not readily subject to ordinary execution. *See Schultz v. Fifth Judicial Dist. Court of Appeals*, 810 S.W.2d 738, 740 (Tex.1991); *Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306 (Tex.App.—

Dallas 1992, no writ); *Bergman v. Bergman*, 828 S.W.2d 555, 557 (Tex.App.—El Paso 1992, no writ); *Finotti v. Old Harbor Co.*, 1999 WL 1034607, at *1 (Tex.App.Dallas Nov.16, 1999, no pet.)(unpublished opinion). Plaintiff has satisfied these requirements.

The items of property that are the subject of Defendant's objections include assets in which Defendant has pledged or assigned to third parties.[1] That Defendant owns or has ownership interest in these assets is not in dispute. It is also undisputed that none of the assets identified in the Report is exempt from attachment, execution, or seizure for satisfaction of liabilities. Therefore, the only question is whether these assets can be readily attached or levied on by ordinary legal process.

The turnover statute does not provide guidance for determining whether property may be readily attached or levied on by regular ordinary legal process; however, the legislative history and case law indicates that the statute was created to reach the type of property at issue in this case. According to Texas House and Senate Committee Reports, the statute was enacted to provide judgment creditors with a remedy to reach a judgment debtor's nonexempt property in cases where traditional methods had proved to be inadequate, including: where the debtor has property outside the state of Texas; where the debtor owns interests in intangible property, such as contract rights receivable, accounts receivable, commissions receivable, and future rights to payments; and where the debtor owns interests in other property that could be easily hidden from a levying officer, such as negotiable instruments, corporate stocks, and corporate securities.

---

1. These assets, which are specifically enumerated on pages 4 and 5 of the Report, include corporate stock, debentures, a brokerage account, partnership and membership interest in various entities, bonds, and accounts receivables.

*See Davis v. Raborn,* 754 S.W.2d 481, 483 (Tex.App.—Houston [1st Dist.], no writ)(citing Hittner, *Texas Post–Judgment Turnover and Receivership Statutes,* 45 Tex. B.J. 417 (1982)). Texas courts, moreover, have applied the turnover statute to reach a wide variety of property, including, corporate stock in the hands of third parties and held out of state, *D.A. Childre v. Great Southwest Life Ins. Co.,* 700 S.W.2d 284, 288 (Tex.App.—Dallas 1985, no writ); shares of stock and accounts receivable, *Arndt v. National Supply Co.,* 650 S.W.2d 547, 549 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.); and promissory notes, *Matrix, Inc. v. Provident Am. Ins. Co.,* 658 S.W.2d 665, 668 (Tex.App.—Dallas1983, no writ).

Defendant, however, contends that it is not the nature of the particular asset that necessarily renders it "not readily capable of attachment or levy," but, rather, it is the judgment debtor's efforts to conceal his ownership of the assets that ultimately justifies a court-ordered turnover. Defendant contends that he has fully cooperated with Plaintiff's postjudgment discovery efforts, including producing all of the pertinent documents in his possession and control. Defendant further asserts that he has not tried to conceal the existence or location of his assets, and has paid $700,000 toward the judgment. That Defendant has willingly revealed the location of his encumbered assets, many of which are out of state, does not make those assets readily attachable or leviable. As previously noted, the assets at issue in this case, namely, corporate stock, debentures, a brokerage account, partnership and membership interest in various entities, bonds, and accounts receivables, are the types of property and property interests the Texas legislature contemplated the statute would reach. The ability of Plaintiff to reach this property through traditional methods is even more difficult since Defendant's interest in these assets has been pledged to various third parties.

That these assets cannot be readily attached is also established by the evidence. The record demonstrates that after post-judgment discovery, Plaintiff attempted to collect the judgment through a writ of execution; however, the writ was returned *nulla bona.* Defendant's argument that Plaintiff must show that other procedures would be "inadequate" is unavailing, as he cites no authority for the proposition. The evidence further establishes that in the six-month period after the entry of judgment, Defendant liquidated, transferred, and encumbered assets, and that, although he reported a net worth of more than $34 million at the time of judgment, his financial condition has since dramatically deteriorated. The court therefore agrees with the magistrate judge that, notwithstanding Defendant's gestures of cooperation and full disclosure, the evidence establishes that Plaintiff cannot collect the judgment by traditional legal process. Plaintiff is therefore entitled to relief under the Texas Turnover Statute.

■ Defendant argues that even if Plaintiff establishes that it is entitled to relief, the pledged assets are not subject to turnover. Defendant explains that he relinquished physical possession of the original certificates, promissory notes and debentures to third party creditors, and that the pertinent pledge and security agreements expressly prohibit him from selling, assigning, transferring, encumbering or otherwise disposing of any of the pledged assets without the secured party's consent. Defendant therefore concludes that because the pledged assets are not in his possession or control, they cannot be subject to turnover relief. Defendant's argument is unfounded.

■ Once a judgment creditor has shown that it is entitled to turnover relief,

the court may order the judgment debtor to turn over nonexempt property for execution, apply the property to the satisfaction of the judgment, or appoint a receiver. *See* Tex. Civ. Prac. & Rem.Code Ann. § 31.002(b)(1)-(3). When nonexempt assets are in the possession of a third party, as in this case, the court may reach those assets if they are *owned* by and *subject to* the judgment debtor's possession or control. *See Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir.1997)(citing *Norsul Oil & Mining Ltd. v. Commercial Equip. Leasing, Co.*, 703 S.W.2d 345, 349 (Tex.App.-San Antonio 1985, no writ)). The turnover statute does not require, as Defendant suggests, that nonexempt property be "in" control of the judgment debtor—only "subject to" the debtor's control. *See* § 31.002(b). That Defendant's ability to dispose of the pledged assets is limited by a third party's security interest in it does not necessarily mean that the assets are no longer subject to Defendant's control. The record establishes that, although his interest is encumbered by pledge and security agreements, Defendant continues to own or have an ownership interest in the pledged assets. *See* Tr. at 7–9; Report at 7. Defendant also admits that he retains voting rights attributable to the corporate stock, Tr. at 77; Report at 7, and that the pledge and security agreements only prohibit him from disposing of

the pledged assets without permission from the respective banks. *Id.* In *Resolution Trust Corp. v. Smith,* the Fifth Circuit found no error in the district court's reliance on the same type of evidence in concluding that the judgment debtors retained control of corporate stock in the hands of a third party.[2] 53 F.3d 72, 78 (5th cir.1995). Based on the evidence before it, the court concludes that Defendant's interest in the pledged stock remains subject to his control.

Insofar as Defendant's interest in the remaining pledged assets, specifically, the brokerage account with Founders Equity Group; the12 % EarthCare Debenture ($7.5 million loan to EarthCare); the 8% Subordinated Note No. 4 from Founders Equity Group, Inc.; the 8% Subordinated Note No. 6 from Founders Equity Group, Inc.; and a limited partnership interest in Sagemark Capital, L.P.; 35% limited partnership interest in V.I. Disposal Corporation; 49% limited partnership interest in Moorehead Property Company, Ltd.; membership interest in Founders Cash Management V, LLC.; and receivables from Eagle Point Golf Club, Inc. in the amount of $600,000, from Felipe Gonzales in the amount of $176,000, and from SWV, the court concludes turnover relief is proper to the extent of Defendant's interest in these assets. The record establishes that

---

**2.** Defendant contends that *Resolution Trust Corp.*, however, is distinguishable because of the "apparently fraudulent nature of the stock transfer described in that case." The court disagrees. In *Resolution Trust Corp.*, the Fifth Circuit determined that the Texas Turnover Statute was the proper vehicle to reach the judgment debtors' interest in stock that had been pledged to their attorney under a pledge agreement that permitted them to retain ownership of the stock. In reaching this conclusion, the Fifth Circuit relied on evidence showing that (1) there was no dispute that the judgment debtors continued to own the stock; (2) the judgment debtors retained full voting rights attributable to the stock;

and (3) the only limitation on the judgment debtors' ability to dispose of the stock was the requirement of the secured third party's written consent to a sale. 53 F.3d at 74. The court did not, as Defendant suggests, consider the fraudulent nature of the stock transfer. Since the turnover statute " 'does not allow for a determination of the substantive rights of involved parties,' " *Resolution Trust Corp.*, 53 F.3d at 80 (quoting *Republic Ins. Co. v. Millard*, 825 S.W.2d 780, 783 (Tex.App.1992, no writ); *see also United Bank Metro v. Plains Overseas Group*, 670 S.W.2d 281, 284 (Tex. App.1983, writ ref'd n.r.e.)), the court is unpersuaded by Defendant's argument.

although Defendant pledged a continuing security interest in the assets to various third party creditors, he continues to own the assets. To the extent that some of these assets are encumbered by pledge and security agreements, the only limitation on Defendant's ability to dispose of the property is permission from the secured party. The magistrate judge found, and the court agrees, that Defendant therefore retains at least some interest in the assets. *See* Report at 8; *Bullock v. Foster Cathead Co.*, 631 S.W.2d 208, 210 (Tex.App.-Corpus Christi 1982, no writ)(noting that general title in pledged property remains with the pledgor, "notwithstanding an apparent transfer of legal title to the [pledgee]."). This determination is further supported by the general proposition that a pledgee "'acquires no interest in the [pledged] property except as security for his debt or obligation, and his actual interest is purely contingent in that it depends for effect on something that may or may not occur.'" *Bullock*, 631 S.W.2d at 211 (quoting 72 C.J.S. Pledges, s 23, p. 31–2.). Defendant's first four objections are **overruled**.

■ Defendant's remaining two objections challenge the magistrate judge's recommendation that a receiver be appointed in this case. Defendant first contends that since most of his assets have been pledged to banks and other financial institutions, there is no imminent risk that the assets will be concealed, lost or diminished in value, and that in view of the superior rights of these creditors, the appointment of a receiver to sell pledged assets will do more harm than good. He disagrees with the magistrate judge's finding that the timing of Defendant's postjudgment transactions suggests the possibility of a fraudulent transfer, and contends that the remedy of receivership cannot be justified on the basis of "sheer speculation" that fraudulent conveyances have occurred. Even if the court were inclined to do so,

there is no need to engage in "sheer speculation," as the evidence clearly supports an inference that Defendant *may have* engaged in fraudulent conduct. Defendant relies on *Kelly v. Armstrong*, 206 F.3d 794, 799 (8th Cir.2000) and *In re Owen J. Rogal, D.D.S., Ltd.*, 38 B.R. 677, 679 (Bankr.E.D.Pa.1984), for the proposition that a postjudgment transaction is not necessarily indicative of fraudulent conduct since debtors are permitted to engage in postjudgment transactions that have a lawful or legitimate purpose. Defendant's reliance on these cases, however, is misplaced, as neither involves the appointment of a receiver or addresses the criteria the court considers in making such a determination.

The probability that fraudulent conduct has occurred or will occur to frustrate a judgment creditor's claim is one factor that the court considers in determining whether to appoint a receiver, *see Santibanez*, 105 F.3d at 242 (citing *Aviation Supply Corp. v. R.S.B.I, Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir.1993)); however, *proof of fraud* is not required. *See Aviation Supply Corp.*, 999 F.2d 314 at 317. As previously noted, Defendant's financial condition since entry of judgment has dramatically deteriorated, and he has engaged in several postjudgment transactions, including debt swaps and asset pledges. Three of these transactions involved Defendant's close friends or business associates, including Norma Stachura, to whom Defendant sold 190 shares of common stock in Highland Holdings, Inc. for a total sum of $1.00. Notwithstanding Defendant's attestation to the contrary, the evidence suggests, at a minimum, the possibility of fraudulent conduct. The court therefore agrees with the magistrate judge that this factor militates in favor of appointing a receiver.

The court also rejects Defendant's argument that the appointment of a receiver in this case for any purpose other than the preservation or conservation of property is inconsistent with the purpose of Fed.R.Civ.P. 66. According to Defendant, "receivers may [only] be appointed to 'preserve property pending final determination of its distribution in supplementary proceedings in aid of execution.'" *Santibanez*, 105 F.3d at 241. Defendant's argument, however, is undermined by the procedural posture of this case, and he cites no authority for the proposition that a receiver's powers are limited to the preservation and conversation of the judgment debtor's property in an ancillary postjudgment proceeding brought in aid of execution. As previously stated, under the turnover statute, the court may "appoint a receiver with the authority to take possession of ... [a judgment debtor's] nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." Tex. Civ. Prac. & Rem.Code § 31.002(b)(3). Defendant's objection is **overruled**.

Insofar as Defendant's objection that the appointment of a receiver would violate the due process rights of secured third parties, the court agrees with the magistrate judge that, "to the extent Defendant even has standing to assert the due process rights of third parties, the [proposed] turnover order adequately addresses those concerns." Report at 8 n. 2. Pursuant to the turnover order, the receiver would be authorized to "to take possession of *Defendant's interest* in [the non-exempt] property and 'to collect, sell, or otherwise liquidate those ... interests *after giving proper notice to third parties who also may have an interest in the property.'" *Id.* and 12. This provision adequately. protects the due process rights of secured third parties since the receiver must provide them with proper notice pri-

or to collecting, selling, or otherwise liquidating Defendant's interest in the assets. Defendant's objection is therefore **overruled**.

Plaintiff objects to the magistrate judge's Report to the extent it does not include a provision authorizing the receiver to vote the shares of stock over which it would exercise control. According to Plaintiff, "shares held by or under the control of a receiver may be voted by such receiver without the transfer thereof into his name if authority so to do be contained in an appropriate order of the court by which such receiver was appointed." Pl.'s Objections at 1 (quoting Tex. Bus. Corp. Act. art 2.29) (Vernon 1980). Here, the receiver's authority to vote shares is implicit in the recommendation. Specifically, the magistrate judge recommends that Defendant be ordered to turn over to the receiver *all* of his right, title, and interest in nonexempt property. Report at 13. This necessarily includes Defendant's voting rights in corporate stock. In any event, to avoid potential. confusion, the court will make clear in its ruling that the receiver is authorized to vote the shares of stock over which it exercises control. Accordingly, Plaintiff's objection is **sustained**.

The findings and conclusions of the magistrate judge are hereby accepted as the findings and conclusions of the court. For the reasons stated herein, Defendant's objections are **overruled**, and Plaintiff's objection is **sustained**. Accordingly, Plaintiff's Amended Application for Turnover Order, filed February 8, 2002 is **granted**; and Plaintiff's application for a charging order is **denied** as unnecessary.

The court appoints the following person to serve as Receiver in this matter:

Charles B. Hendricks, Esq.

Cavazos, Hendricks, Poirot & Dewey, P.C.

900 Jackson Street, Suite 570
Dallas, Texas 75202
Phone: (214) 748–8171
Facsimile: (214) 748–6750

The Receive is authorized to: (1) take possession and control of all nonexempt assets and property interest of Defendant Donald F. Moorehead, Jr. (including those listed in Exhibit A to Plaintiff's Amended Application for Turnover Order); (2) collect, sell, or otherwise liquidate those assets and property interests after giving proper notice to third parties who also may have an interest in the property; (3) exercise all powers and rights exercisable by Defendant in reference to his interest in the stock, bonds, warranties, debentures, and options in the corporations in which he has any legal or beneficial interests, including but not limited to the exercise of voting rights tied to those interests, on terms approved by the court; (4) pay the proceeds to Plaintiff World Fuel Services Corporation to the extent required to satisfy the judgment in this case; and (5) perform any and all acts necessary and appropriate in order to take possession and control of Defendant's nonexempt assets and property interests, and to collect, sell, or otherwise liquidate those assets and property interests.

The appointment of the Receiver shall take effect upon the posting of a cash bond in the amount of $1,000, which the court finds to be an adequate and reasonable bond under the circumstances. Plaintiff shall advance the costs of receivership, and such costs shall be taxed against Defendant. As a further requirement of the court, the Receiver shall file an oath that he will faithfully execute the duties of a Receiver as set forth in this order.

Once the appointment of Receiver becomes effective (that is, upon the filing of the Receiver's Oath and posting of a cash bond), Defendant shall turn over to the Receiver all of his right, title, and interest in nonexempt property, together with any documents or records related to such property, including without limitation all original stock certificates, pledge agreements, security agreements, and promissory notes. Until such time as this property is turned over to the receiver, Defendant and all persons acting in concert with him, together with all persons having actual knowledge of this order, are restrained and enjoined from transferring, concealing, or otherwise disposing of Defendant's interest in any property.

Plaintiff is awarded its reasonable costs and attorney's fees for services rendered in this proceeding, subject to approval of the court. The parties are directed to confer in an attempt to agree on a reasonable fee. If this issue cannot be resolved by agreement, Plaintiff may file an application for fees and costs within 14 days from the date of this order.

The clerk of the court is authorized to issue all writs and process necessary to enforce this order, including writs of execution and attachment, to the extent authorized by law.

## FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

KAPLAN, United States Magistrate Judge.

Plaintiff World Fuel Services Corporation has filed separate applications for turnover relief and a charging order against Defendant Donald F. Moorehead, Jr. For the reasons stated herein, the application for turnover relief should be granted and the application for a charging order should be denied.

### I.

This is an ancillary proceeding to enforce a money judgment entered against

defendant in the United States District Court for the Southern District of Florida. *World Fuel Services Corp. v. Moorehead,* No. 01–1803–CIV. On July 16, 2001, plaintiff obtained a judgment in the principal sum of $4,978,953, together with pre-judgment interest of $121,027.24, attorney's fees, and court costs. Plaintiff registered the judgment in the Northern District of Texas on September 19, 2001.[1] To date, defendant has made three payments totaling $700,000, leaving a balance of approximately $4,399,980. The judgment is final, subsisting, and remains unsatisfied.

During the past six months, plaintiff has conducted extensive discovery in an attempt to locate assets to satisfy the judgment. For the most part, defendant has cooperated with plaintiff's discovery efforts. Defendant, his wife, and administrative assistant all were deposed and have produced "hundreds of pages" of documents concerning the value, location, and status of his assets. However, plaintiff has learned that many of these assets have been transferred, pledged, swapped, or otherwise encumbered. On October 15, 2001, the United States Marshal served a writ of execution but was unable to locate any property subject to execution.

Frustrated by its inability to collect this judgment by traditional means, plaintiff seeks an order requiring defendant to turn over his non-exempt assets to the marshal or a court-appointed receiver. Among the assets identified by plaintiff are stocks, bonds, debentures, options, accounts receivable, and other property interests that have been pledged to various third parties.

Plaintiff also seeks a charging order against defendant's interest in two limited partnerships and a limited liability company. The parties have fully briefed the issues and were given an opportunity to present additional evidence and argument at a hearing on February 1, 2002. This matter is now ripe for determination.

## II.

 A federal court may enforce a money judgment "in accordance with the practice and procedure of the state in which the district court is held." FED. R. CIV. P. 69(a). Under the Texas turnover statute, a judgment creditor is entitled to aid from a court in order to reach property to satisfy a judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002, *et seq.* (Vernon 1997 & Supp.2001). In order to obtain a relief under this statute, the judgment creditor must show that: (1) the debtor owns property; (2) that cannot be readily attached or levied on by ordinary legal process; and (3) is not exempt from attachment, execution, or seizure. *Id.* § 31.002(a). *See also Admiral Insurance Co. v. Baker,* 1998 WL 790815 at * 2 (N.D.Tex. Sept.28, 1998) (Kaplan, M.J.), *citing Criswell v. Ginsberg & Foreman,* 843 S.W.2d 304, 306 (Tex. App.—Dallas 1992, no writ). Once these requirements are met, the court may issue an injunction, appoint a receiver, or order the debtor to turn over non-exempt property for execution. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b); *see also Admiral Insurance Co.,* 1998 WL 790815 at *2. The trial court has wide discretion in determin-

---

**1.** The statute governing registration of foreign judgments provides, in relevant part:

A judgment in an action for the recovery of money or property entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district ... when the judgment has become final by appeal or

expiration of the time for appeal or when ordered by the court that entered the judgment for good cause shown ... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in a like manner ...

28 U.S.C. § 1963.

ing whether and in what form turnover relief should be ordered. *See Admiral Insurance*, 1998 WL 790815 at *2, *citing Brink v. Ayre*, 855 S.W.2d 44, 46 (Tex. App.—Houston [14th Dist.] 1993, no writ); *Buttles v. Navarro*, 766 S.W.2d 893, 894 (Tex.App.—San Antonio 1989, no writ).

The Texas turnover statute is purely procedural in nature and does not provide for the determination of substantive rights. *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 77 (5th Cir.1995), *citing Cross, Kieschnick & Co. v. Johnston*, 892 S.W.2d 435, 439 (Tex.App.—San Antonio 1994, no writ). "[T]he purpose of the turnover proceeding is merely to ascertain whether or not an asset is in the possession of the judgment debtor or subject to the debtor's control." *Smith*, 53 F.3d at 77, *quoting Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 227 (Tex.1991). However, the court may reach assets in the hands of third parties if the debtor retains control of those assets. *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 239 (5th Cir.1997), *citing Norsul Oil & Mining Ltd. v. Commercial Equipment Leasing Co.*, 703 S.W.2d 345, 349 (Tex.App.—San Antonio 1985, no writ). *But see Parks v. Parker*, 957 S.W.2d 666, 668 (Tex.App.—Austin 1997, no writ) (declining to follow line of cases authorizing turnover relief to reach property owned by debtor but held by third party).

### III.

The parties largely agree on the assets at issue in this turnover proceeding. Of these assets, the following have been pledged to third parties:

| | Asset | Secured Party |
|---|---|---|
| 1. | 7 million shares of preferred stock in EarthCare Company | CIB Bank |
| 2. | 1,072,000 shares of common stock in EarthCare Company | CIB Bank |
| 3. | 12% Debenture to secure $7.5 million loan to EarthCare | CIB Bank |
| 4. | Brokerage Account with Founders Equity Group | First Southwest |
| 5. | 2,750 shares of common stock in Texas Air Center, Inc. | Bank of America |
| 6. | 35% limited partnership interest in V.I. Disposal Corporation | Bank of America |
| 7. | $600,000 receivable from Eagle Point Golf Club, Inc. | Thomas Hughes |
| 8. | 8% Subordinated Note #4 from Founders Equity Group, Inc. | Bank of America |
| 9. | 8% Subordinated Note #6 from Founders Equity Group, Inc. | Bank of America |
| 10. | $176,000 receivable from Felipe Gonzales | Thomas Hughes |
| 11. | Receivable from SWV | CIB Bank |
| 12. | 49% limited partnership interest in Moorehead Property Company, Ltd. | Unknown |
| 13. | Limited partnership interest in Sagemark Capital, L.P. | Bank of America |
| 14. | Membership interest in Founders Cash Management V, LLC | G. Moorehead and Mark Smith |

According to defendant, the following assets have been transferred, assigned, or otherwise disposed of:

| | Asset | Disposition |
|---|---|---|
| 1. | 190 shares of common stock in Highland Holdings, Inc. | Transferred to Norma Stachura |
| 2. | $384,597 receivable from E.A. Houston | Debt forgiven |
| 3. | $49,500 receivable from Dale Moorehead | No longer owned by debtor |
| 4. | $282,932 receivable from Paradise Waste | Sold to Thomas Hughes |

The following unencumbered assets are still owned by defendant:

1. Contract rights in Earth-Care Option Agreement
2. 37,500 shares of common stock in Earthwise Technologies, Inc.
3. $40,000 receivable from T. Burrell

4. $329,760 receivable from Cardinal Waste

5. $35,000 receivable from Arturo Davila

6. F2 Entertainment Debenture $50,000

7. $616,000 receivable from Highway Holdings, Inc.

8. $250,000 receivable from Info Highway

9. $10 million receivable from Robert Smith

10. $141,000 receivable from J. Tucker and J. Pfeffer

11. Partnership interest in Elk Dance, Colorado, LLC

12. Stock in General Waste Corporation

13. Royalty interest in South Carolina landfill

(*See* Def.App., Exh. 1; Plf. Am.App., Exh. A).

Defendant concedes that none of these assets are exempt from attachment, execution, or seizure. Instead, he challenges the two other predicates for turnover relief by arguing that: (1) the pledged assets are not in his possession or control; and (2) plaintiff has not shown that the assets cannot be readily attached or levied on by ordinary legal process. The Court will address each argument in turn.

### A.

█ Defendant correctly notes that the Texas turnover statute does not authorize a court "to issue orders against those who ... are not judgment debtors or under the judgment debtor's control." *See Buller*, 806 S.W.2d at 226. However, the mere fact that assets have been pledged to third parties does not necessarily mean that they are not owned by or subject to the control of the debtor. *Smith*, 53 F.3d at 78; *Norsul Oil & Mining*, 703 S.W.2d at 349. Texas courts have applied the turnover statute to a wide variety of property, including property which the judgment debtor did not own outright. *See, e.g.*

*Daniels v. Pecan Valley Ranch,* 831 S.W.2d 372, 377 (Tex.App.—San Antonio 1992, writ denied), *cert. denied,* 508 U.S. 965, 113 S.Ct. 2944, 124 L.Ed.2d 692 (1993) (payment from annuity); *Ross v. 3D Tower Ltd.,* 824 S.W.2d 270, 272 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (accounts receivable); *Cain v. Cain,* 746 S.W.2d 861, 863 (Tex.App.—El Paso 1988, writ denied) (military retirement benefits); *First City National Bank v. Phelan,* 718 S.W.2d 402, 405–06 (Tex.App.—Beaumont 1986, writ ref'd n.r.e.) (future payments from testamentary trust); *Matrix, Inc. v. Provident American Insurance Co.,* 658 S.W.2d 665, 668 (Tex.App.—Dallas 1983, no writ) (promissory note).

With respect to the EarthCare and Texas Air Center stock pledged to CIB Bank and Bank of America, defendant admits that he still retains voting rights attributable to the stock. The pledge agreements themselves make clear that defendant is the lawful owner of the stock and prohibit him only from selling, transferring, assigning, or encumbering the collateral without the permission of the bank. (Def.App., Exhs.2, 4, 10). Consequently, defendant's interest in this property can be the subject of a turnover order. As the Fifth Circuit stated in *Smith:*

There is no dispute that, although their interest was encumbered by the pledge agreement to Fuqua, the Smiths continued to own the Park Club stock. *Under the pledge agreement between Smith and Fuqua, Smith retained full voting rights attributable to the stock and Smith's only limitation in his ability to dispose of the stock was the requirement of Fuqua's written consent to a sale.* In light of the pledge agreement and Fuqua's testimony, the district court determined that Smith retained control of the Park Club stock, and we find no error in this conclusion. *It is clear that the district court did not err in using the*

*turnover statute to order the Smiths to turn over whatever interest they had in the Park Club stock to the district court.*

*Smith,* 53 F.3d at 78 (emphases added).

Similarly, the pledge agreements that encumber defendant's other assets do not prevent the Court from granting turnover relief. (*See* Def.App., Exhs. 7, 9, 10, 11). There is no question that defendant retains at least some interest in the Earth-Care Debenture, the Founders Equity bro-kerage account, V.I. Disposal Corporation, Moorehead Property Company, Sagemark Capital, Founders Cash Management V, Eagle Point Golf Club, and various other receivables. As such, these assets remain subject to defendant's control. *See Bullock v. Foster Cathead Co.,* 631 S.W.2d 208, 210 (Tex.App.—Corpus Christi 1982, no writ) (noting that general title in pledged property remains with pledgor, "notwithstanding an apparent transfer of legal title to the [pledgee]"). Turnover relief is proper to the extent of defendant's interest in these assets.[2]

### B.

Defendant further argues that plaintiff has not shown that these assets cannot be readily attached or levied on by ordinary legal process. In support of this argument, defendant points out that he has paid $700,000 on the judgment, fully cooperated with plaintiff's post-judgment discovery efforts, and has not tried to conceal any assets. While this may be true, it

does not deprive plaintiff of the ancillary remedy of turnover relief. Plaintiff tried to collect the judgment through a writ of execution, but the writ was returned *nulla bona.* Despite defendant's superficial gestures of cooperation and full disclosure, the evidence shows that he has systematically liquidated, transferred, and encumbered assets in the six-month period after the judgment was entered. The following transactions are illustrative:

1. Defendant pledged 7 million shares of preferred stock in EarthCare Company to CIB Bank on September 21, 2001 (Def.App., Exh. 1);

2. Defendant pledged a $600,000 receivable from Eagle Point Golf Club, Inc. to Thomas Hughes on October 9, 2001 (*Id.,* Exh. 11);

3. Defendant canceled a $384,597 promissory note from E.A. Houston and forgave the debt;

4. Defendant transferred 190 shares of common stock in Highland Holdings, Inc. to his administrative assistant, Norma Stachura, in December 2001; and

5. Defendant assigned a $282,932 promissory note from Paradise Waste to Thomas Hughes on November 15, 2001.

Moreover, defendant's financial condition has dramatically deteriorated over the past six months. His financial statement dated June 1, 2001 shows a net worth of more than $34 million. (Px.1). Now de-

---

**2.** Defendant raises a number of constitutional concerns regarding any turnover order issued against a third party who is not before the Court, has no notice of this proceeding, and may not be subject to personal jurisdiction. Indeed, "[a] turnover order that issues against a non-party for property not subject to the control of the judgment debtor completely bypasses our system of affording due process." *Ex parte Swate,* 922 S.W.2d 122, 125 (Tex.1996) (Gonzalez, J., concurring). However, the turnover relief granted in this case is not so broad. The Court has not ordered any

non-party to turn over money or property owed to defendant under threat of imprisonment. Rather, the Court has appointed a receiver to take possession of *defendant's interest* in such property and "to collect, sell, or otherwise liquidate those ... interests *after giving proper notice to third parties who also may have an interest in the property.*" FINDINGS & REC OF MAG. JUDGE, 2/26/02 at 12 (emphasis added). To the extent that defendant even has standing to assert the due process rights of third parties, the turnover order adequately addresses those concerns.

fendant maintains that he does not have sufficient unencumbered assets to pay the judgment. This evidence convincingly establishes that plaintiff cannot collect the judgment by traditional legal process.

### C.

The Court now must determine in what form turnover relief should be ordered. The Texas turnover statute specifically authorizes the court to issue an injunction, appoint a receiver, or order the debtor to turnover non-exempt property for execution. Tex. Civ. Prac. & Rem. Code Ann. § 31.002(b)(1)-(3); *see also Admiral Insurance Co.*, 1998 WL 790815 at *2. In view of the anticipated difficulties in accounting, valuing, and selling defendant's interest in the assets pledged to third parties, the Court finds that the appointment of a receiver is warranted.

### 1.

■ The appointment of a receiver in a diversity case is a procedural matter governed by federal law and federal equitable principles. *National Partnership Investment Corp. v. National Housing Development Corp.*, 153 F.3d 1289, 1291–92 (11th Cir.1998). Under Rule 66 of the Federal Rules of Civil Procedure, the appointment of a receiver can be sought "by anyone showing an interest in certain property or a relation to the party in control or ownership thereof such as to justify conservation of the property by a court officer." *Santibanez*, 105 F.3d at 241, *citing* 7 Moore's Federal Practice ¶ 66.05[1] at 66.21 (2d ed.1993). Receivers may be appointed "to preserve property pending final determination of its distribution in supplementary proceedings in aid of execution." *Id.* In addition:

> [R]eceivership may be an appropriate remedy for a judgment creditor who seeks to set aside allegedly fraudulent conveyances by the judgment debtor, or who has had execution issued and returned unsatisfied, or who proceeds through supplementary proceedings pursuant to Rule 69, or who seeks to subject equitable assets to the payment of his judgment, or who other wise is attempting to have the debtor's property preserved from dissipation until his claim can be satisfied.

*Id., quoting* 12 C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure § 2983 at 21–22 (2d ed.1997). Among the factors that courts have considered as indicating the need for a receivership are: (1) the validity of the claim of the party seeking a receiver; (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim; (3) imminent danger that property will be concealed, lost, or diminished in value; (4) inadequacy of legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointing a receiver will do more harm than good. *Id., citing Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir.1993).

### 2.

After carefully reviewing the evidence, the Court finds that all these factors militate in favor of appointing a receiver. There is no question that plaintiff has a valid claim against defendant—in fact, the claim has been reduced to a $5.1 million judgment. At the time this judgment was entered, defendant reported a net worth of more than $34 million. Today, he either lacks the financial resources to pay the judgment or refuses to do so. Most of his assets are pledged or otherwise encumbered, with many of these transactions occurring after the judgment was entered. Defendant also has engaged in debt swaps and other actions in an apparent attempt to avoid seizure of his assets. Although defendant maintains that "these assets have been pledged pursuant to armslength business transactions," the timing

of these transactions at least suggests the possibility of a fraudulent transfer.[3] As defendant continues to liquidate, transfer, and encumber assets, there is an imminent danger that property will be concealed, lost, or diminish in value. The Court has already determined that plaintiff cannot collect the judgment by ordinary legal process. Nor has defendant shown that the appointment of a receiver will "do more harm than good."

For these reasons, the Court concludes that a receivership is warranted. However, the Court declines to appoint Richard M. Hull, the receiver candidate recommended by plaintiff. Although Hull is eminently qualified to serve in that capacity, he was affiliated with the law firm of Gardere & Wynne from 1996–2000. The Gardere firm currently serves as local counsel for plaintiff in this case. Consequently, Hull's impartiality may reasonably be questioned. *See Government of the Virgin Islands v. Lansdale,* 172 F.Supp.2d 636, 654 (D.Vi.2001), *quoting* BLACK'S LAW DICTIONARY 1268 (6th ed.1990) (receiver is a neutral party "appointed by the court to receive and preserve the property or fund in litigation …"). Instead, the Court appoints the following disinterested person to serve as a receiver:

Charles B. Hendricks, Esq.

Cavazos, Hendricks, Poirot & Dewey, P.C.

900 Jackson Street, Suite 570

Dallas, Texas 75202

Phone: (214) 748–8171

Fax: (214) 748–6750

The receiver should be authorized to: (1) take possession and control of all defendant's non-exempt assets and property interests; (2) collect, sell, or otherwise liquidate those assets and property interests

after giving proper notice to third parties who also may have an interest in the property; and (3) pay the proceeds to plaintiff to the extent required to satisfy the judgment. This appointment will take effect after this recommendation is approved by the district judge and upon the filing of the Receiver's Oath and a cash bond in the amount of $1,000, which the Court finds to be an adequate and reasonable bond under the circumstances. Plaintiff should be ordered to advance the costs of this receivership, with such costs taxed against defendant.

Defendant should be ordered to turn over to the receiver all of his right, title, and interest in non-exempt property, together with all documents and records evidencing or relating to such property, including without limitation all original stock certificates, pledge agreements, security agreements, and promissory notes.

Until such time as this property is turned over to the receiver, defendant and all persons acting in concert with him, together with all persons having actual knowledge of this order, should be restrained and enjoined from transferring, concealing, or otherwise disposing of defendant's interest in any property.

**IV.**

By separate application, plaintiff seeks a charging order against defendant's interest in Moorehead Property Company, Ltd., Sagemark Capital, LP, and Founders Cash Management V, LLC. Section 7.03(a) of the Texas Revised Limited Partnership Act provides, in relevant part:

> On application to a court of competent jurisdiction by a judgment creditor of a partner or of any other owner of a part-

---

**3.** The Court notes that three of the transactions—the two pledges to Thomas Hughes and the sale of 190 shares of stock in Highland Holdings, Inc. to Norma Stachura—involved close friends or business associates of defendant. Moreover, the Highland Holdings stock was transferred to Stachura for $1.00.

nership interest, the court may charge the partnership interest of the partner or other owner with payment of the unsatisfied amount of the judgment, with interest, may then or later appoint a receiver of the debtor partner's share of the partnership's profits and of any other money payable or that becomes payable to the debtor partner with respect to the partnership, and may make all other orders, directions, and inquiries that the circumstances of the case require.

TEX. REV. CIV. STAT. ANN. art. 6132a–1, § 7.03(a) (Vernon Supp.2001). A similar provision is applicable to Texas limited liability companies. *See id.* art. 1528n, § 4.06(A). Since the Court has decided to appoint a receiver to collect, sell, and liquidate all of defendant's non-exempt assets in satisfaction of the judgment—including his interest in any limited partnerships and limited liability companies—a charging order is not necessary. Accordingly, plaintiff's application should be denied.

### V.

Finally, plaintiff requests reasonable costs and attorney's fees. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(e). The Court has discretion whether to award attorney's fees in a turnover proceeding. *Thomas v. Thomas,* 917 S.W.2d 425, 436 (Tex.App.—Waco 1996, no writ). A number of factors inform that discretion, including: (1) the nature and complexity of the case; (2) the amount in controversy; (3) the amount of time and effort required; and (4) the expertise of counsel. *See id.* at 437; *Murrco Agency, Inc. v. Ryan,* 800 S.W.2d 600, 607 (Tex.App.—Dallas 1990, no writ).

The Court determines that plaintiff should be awarded costs and attorney's fees in this case. The parties should be directed to confer in an attempt to agree on a reasonable fee. If this issue cannot be resolved by agreement, plaintiff may file an application for fees and costs within 14 days after this recommendation is approved by the district judge. *See* FED. R. CIV. P. 54(d).

### RECOMMENDATION

Plaintiff's application for turnover relief and the appointment of a receiver should be granted in conformity with the recommendations set forth herein. Plaintiff's application for a charging order should be denied as unnecessary.

Feb. 27, 2002.