

# NUMBER 13-12-00531-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

DESI LEAL,                                                                  Appellant,

v.

TAMMY LEAL,                                                                  Appellee.

## On appeal from the 267th District Court
## of Jackson County, Texas.

## MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Garza and Perkes
## Memorandum Opinion by Chief Justice Valdez

Appellant, Desi Leal, challenges the trial court's order enforcing a turnover order in favor of appellee, Tammy Leal. By two issues, Desi complains that: (1) he paid the original judgment and Tammy acquiesced; and (2) the trial court erred in granting the original turnover order signed on June 15, 2009. We affirm.

I. BACKGROUND

On June 6, 2006, in an order and decree to partition and distribute the estate of Alex L. Leal, the deceased, Desi and Tammy acquired equal shares in Alex's business, Jackson County Vacuum Truck Service, Inc. (the "business").[1] In the June 6, 2006 order, the trial court also awarded Tammy a judgment against Desi for $8,000. Apparently Desi failed to pay Tammy the $8,000, and Tammy filed suit for a turnover order. On June 15, 2009, the trial court signed a turnover order (the "2009 Turnover Order") requiring Desi to "execute and deliver" to Tammy "a signed Irrevocable Stock Power . . . authorizing transfer of 5% of his ownership interest" in the business "on or before June 29, 2009." The trial court also awarded $2,500 in attorney's fees to Tammy. Neither Desi nor Tammy appealed the 2009 Turnover Order.

On March 12, 2012, Tammy filed a motion to enforce the 2009 Turnover Order in the trial court. Tammy complained that Desi had not complied with the 2009 Turnover Order because he had not "delivered a signed irrevocable stock power to" her. Tammy asked the trial court to set enforcement of the turnover order for a hearing.

Desi responded to Tammy's motion to enforce the 2009 Turnover Order on May 9, 2012. In his response, Desi asserted that the trial court did not have jurisdiction to divest him of five percent of his shares of stock in the business because the original judgment regarding his father's estate awarded Tammy the amount of $8,000, which had been secured by a promissory note Desi signed. Desi argued that because the debt was secured by a promissory note, and the note had not been foreclosed, Tammy was required to "sue on the note" and Desi "would have been allowed to bring up all defenses in payment and offset, of which there were numerous." Desi further argued

---

[1] Alex L. Leal was Desi's and Tammy's father.

2

that the doctrine of accord and satisfaction applied because he had paid the debt by wire transfer and Tammy had not returned the funds within ninety days. Desi also argued that at some prior proceeding Tammy allegedly "dropped her judgment against him"; therefore, Tammy should be judicially estopped from collecting the debt. Based on Tammy's alleged prior "dropping" of "her judgment" against Desi, Desi also argued that quasi-estoppel applied. Finally, Desi argued that under the doctrine of laches, Tammy is barred "from now rejecting payment and requesting turnover of collateral" due to her allegedly "unreasonable delay in returning the monies."

On May 10, 2012, the trial court held a hearing on Tammy's motion to enforce the 2009 Turnover Order. No testimony was heard, and the trial court only considered argument from each party's trial counsel. At the hearing, Tammy's attorney explained that when Tammy sued Desi to enforce the promissory note, "[t]hat lawsuit was defended on the basis that there was no longer a promissory note. That the promissory note had been merged into the" original judgment signed by the trial court judge in 2006. According to Tammy's attorney, Tammy then filed her motion for turnover relief, which the trial court granted in 2009 via the 2009 Turnover Order. Tammy's attorney explained that Desi had not complied with the order because he had not tendered the five percent interest of his stock in the business. Tammy's attorney stated that Desi had wire-transferred funds to Tammy's former attorney "hoping to settle the underlying judgment"; however, those funds had been rejected. Tammy's attorney argued that the trial court should order Desi to turn over the stock because he did not appeal the 2009 Turnover Order.

Desi's attorney argued, in relevant part, that under the doctrine of accord and satisfaction, once the debtor tenders payment, "the note's paid. . . . The creditor can

3

reject it but it specifically tells how the creditor rejects it. The creditor has to send the money back in ninety days. If they don't . . . it's all over." Desi's attorney also argued that the 2009 Turnover Order improperly collateralized Desi's stock in the business. Desi's attorney stated, "You can get a turnover order but what they would have to do then is take the collateral and either judicially sell it or put it up for public auction. They're entitled to whatever the amount of money that they deserve is." Desi's attorney explained, "They have to reimburse to Desi the difference between what they were owed and what [the collateral] was sold for. In other words, they can't foreclose on a turnover order, receive $100,000 worth of stock for $8,000 that would have paid it off and keep the hundred thousand dollars." Tammy's attorney responded that because Desi did not appeal the 2009 Turnover Order ordering him to transfer his five percent shares in the business, the order must be enforced as it is written. Tammy's attorney argued that the trial court lost its plenary power to alter the 2009 Turnover Order and that "the jurisdiction of the court today allows [the trial court] to do really one thing, require [Desi] to comply with that order as written."

The trial court asked Desi's attorney to explain when and how the 2009 Turnover Order "to deliver the stock [became] a promissory note." Desi's attorney replied, "That's in 2009." The trial court said, "I mean, show me the document. Show me the document that says in lieu of my receiving stock I'm going to [accept] $8,000." Desi's attorney directed the trial court to review a string of emails concerning the wire transfer of funds to Tammy's attorney and to consider the fact that the funds were not returned to him for three years.

The trial court then explained that in the emails, Tammy's attorney stated that Tammy rejected the offer of a cash payment in lieu of the stock power and then told

Desi's attorney, "Please do not send payment as it will be returned." Tammy's attorney stated that the funds were received on July 1, 2009, which was two days after Tammy's attorney sent the rejection letter. The trial court expressed displeasure with the fact that the money was not returned to Desi within ninety days; however, the trial court also expressed concern with allowing Desi to satisfy the 2009 Turnover Order by paying cash in lieu of stock. Tammy's attorney explained that the ninety-day return limit pertains to negotiable instruments and that this case does not involve a claim for a negotiable instrument. Tammy's attorney stated that he found it "incredible . . . that [Desi] could come into court really and argue the UCC and promissory notes and all that stuff when they filed a response to summary judgment [in another related proceeding] saying that there is no promissory note. It's a judgment." The trial court requested briefs from both sides before making a ruling.[2]

In a letter filed with the trial court on May 15, 2012, Tammy's attorney, Daniel W. Lanfer, stated that Desi's attorney wired $11,838.08 to Tammy's former attorney, Terry Carroll. According to Lanfer, Carroll held the money in trust and the money was eventually transferred to Lanfer, who also held it in trust. Lanfer stated, in the letter, that Tammy had instructed Carroll to reject the tendered funds and that based upon that request, Carroll sent a letter on June 29, 2009 to Desi's attorney "that unequivocally rejected the attempted settlement of the underlying debt obligation." Lanfer argued that Desi could not satisfy the 2009 Turnover Order by tendering a cash payment and was required to satisfy the order only by signing "the irrevocable stock power." Tammy

---

[2] Our review of the clerk's record shows that Tammy filed a brief in support of her motion to enforce the 2009 Turnover Order with exhibits on May 15, 2012. The record contains no brief from Desi. However, Desi filed a motion to reconsider the order of enforcement with exhibits on June 5, 2012 and then filed a motion to reconsider, for new trial and to require or declare the satisfaction of judgment and mootness of the 2009 Turnover Order with exhibits on June 29, 2012. Desi does not complain on appeal of the trial court's rulings on these motions.

5

attached a copy of the June 29, 2009, letter from her attorney to Desi. The letter stated, "This letter is to confirm my email that my client, Tammy Leal, has rejected your client's tender of payment for the judgment in lieu of the stock power ordered by the Court to be delivered today. Please do not send the payment, as it will be returned." Subsequently, Desi transferred the funds to Tammy's attorney. The money held in trust was eventually returned to Desi sometime in 2012.[3]

On May 29, 2012, the trial court signed an order enforcing the 2009 Turnover Order. This appeal followed.

## II. THE 2009 TURNOVER ORDER[4]

By his second issue, Desi contends, without citation to appropriate authority, that the trial court erred in granting a turnover order that "substantially modified" the 2006 final judgment. Specifically, Desi argues that the trial court improperly ordered him to turnover his stock when the original judgment awarded $8,000. However, the order that allegedly "substantially modified" the 2006 final judgment awarding Tammy $8,000 is the 2009 Turnover Order, which was signed by the trial court in 2009. Thus, because the 2009 Turnover Order was a final appealable order, Desi was required to appeal the 2009 Turnover Order within the applicable appellate timetable. *See* TEX. R. APP. P. 26.1 (delineating the timetables for when a party must file a notice of appeal in civil cases including that: (1) a party who does not file a motion for new trial has thirty days to appeal; (2) a party who files a motion for new trial, a motion to modify the judgment, or a motion to reinstate has ninety days to appeal; and (3) a party in a restricted appeal has

---

[3] The record does not clearly show exactly when the money was returned, but it is undisputed that Desi's money was returned in 2012.

[4] We will address Desi's second issue first because it is determinative of some of Desi's arguments in his first issue.

6

six months after the judgment or order is signed to file its notice of appeal); *Bahar v. Lyon Fin. Servs.*, 330 S.W.3d 379, 386 (Tex. App.—Austin 2010, pet. denied) (providing that a turnover order is deemed to be a final, appealable judgment by the appellate courts because it acts as a mandatory injunction against the judgment debtor); *see also Black v. Shor*, Nos. 13-11-00570-CV & 13-11-00715-CV, 2013 Tex. App. LEXIS 4789, at *9 (Tex. App.—Corpus Christi Apr. 18, 2013, no pet.) (same). Desi did not do so.[5] Accordingly, Desi's attempt to attack the 2009 Turnover Order by this appeal is not properly before us.[6] *See Bahar*, 330 S.W.3d at 386.

Moreover, Desi does not argue that he is entitled to collaterally attack the 2009 Turnover Order, that the order is void, or that the trial court lacked jurisdiction to make the order. *See PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 272 (Tex. 2012) (explaining that a final judgment may not be collaterally attacked unless it is void). In addition, Desi does not complain on appeal that the enforcement order—the order he is appealing—is void or that it constituted a "material change in substantial adjudicated portions of the [2009 Turnover Order]." *See Matz*, 961 S.W.2d at 452. Without explanation or citation to appropriate authority, Desi states, "Tammy sought and obtained a turnover order that substantively changed the terms of the prior judgment turning it from a money judgment into a judgment for recovery of stock." Desi, however, does not state why the trial court

---

[5] Therefore, even if the 2009 Turnover Order constituted a "material change in substantial adjudicated portions of the [2006] judgment," Desi should have brought that issue for review in an appeal of the 2009 Turnover Order. *See Matz v. Bennion*, 961 S.W.2d 445, 452 (Tex. App.—Houston [1st Dist.] 1997, writ. denied) (quoting *Katz v. Bianchi*, 848 S.W.2d 372, 374 (Tex. App.—Houston [14th Dist.] 1993, orig. proceeding)).

[6] We note that a trial court may sign a turnover order if, among other things, the judgment debtor owns property that "cannot be readily attached or levied on by ordinary legal process." *Suttles v. Vestin Realty Mtg. I, Inc.*, 317 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2010, no pet.). "Property that cannot be readily attached or levied on by ordinary legal process includes property such as shares of stock and accounts receivable." *Id.* (citing *Arndt v. Nat'l Supply Co.*, 650 S.W.2d 547, 548 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.)).

7

abused its discretion by enforcing the 2009 Turnover Order. His argument appears to be an attempt to impermissibly attack the propriety of the trial court's 2009 Turnover Order on the basis that the trial court could not award any property other than cash to satisfy the 2006 judgment. However, he cites no authority, and we find none, supporting his argument that the 2009 Turnover Order was rendered in error on that basis. In fact, section 31.002(a) states, "[a] judgment creditor is entitled to aid from a court of appropriate jurisdiction through injunction or other means in order to reach property to obtain satisfaction on the judgment if the judgment debtor owns property, including present or future rights to property, that: (1) cannot readily be attached or levied on by ordinary legal process; and (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities. TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a). Section 31.002(a) appears to grant the trial court with authority to levy shares of stock in satisfaction of a cash judgment. *See id.*; *Arndt v. Nat'l Supply Co.*, 650 S.W.2d 547, 548 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (concluding that appointment of a receiver was appropriate in a case where shares of stock and accounts receivable had been ordered to be turned over in satisfaction of a judgment); *World Fuel Svcs. Corp. v. Moorehead*, 229 F.Supp.2d 584, 587 (N.D. Tex. 2002) (explaining that when the Texas legislature wrote the turnover statute it had contemplated attachment of judgment debtor's corporate stock); *see also Hanif v. Clarksville Oil & Gas Co.*, No. 06-09-00110-CV, 2010 Tex. App. LEXIS 3976, at *13 (Tex. App.—Texarkana May 27, 2010, no pet.) ("Committee reports from the Texas House and Senate state the turnover statute was enacted to provide judgment creditors with a remedy to reach a judgment debtor's nonexempt property in cases where traditional methods had proved to be inadequate, including situations where the debtor

8

owns interests in other property that could be easily hidden from a levying officer, such as negotiable instruments, corporate stocks, and corporate securities.") (citing *Davis v. Raborn*, 754 S.W.2d 481, 483–84 (Tex. App.—Houston [1st Dist.] 1988), *vacated upon settlement*, 795 S.W.2d 716 (Tex. 1990) (citing *David Hittner, Texas Post-Judgment Turnover and Receivership Statutes*, 45 TEX. B.J. 417 (1982))). Therefore, we are not persuaded by his argument. We overrule Desi's second issue.

### III. SATISFACTION OF THE DEBT

By his first issue, Desi contends that because he tendered the funds to Tammy's attorney, and the money was not returned for three years, he satisfied the 2006 judgment. Desi made a different argument to the trial court; he relied on the Uniform Commercial Code's ("UCC") requirements regarding accord and satisfaction. Desi argued that under the UCC, he satisfied his debt to Tammy because the original debt was created by a promissory note, he paid Tammy the funds, and Tammy failed to return the funds within ninety days.[7]

On appeal, Desi neither cites the UCC nor argues that it applies. Instead, Desi argues that because Tammy "held on to [the funds] for nearly three years, she did not prove that she remained a judgment creditor when the trial court entered its 2012 enforcement order." In the trial court, Desi did not make the argument that Tammy did not prove that she "remained a judgment creditor." Therefore, this argument is not preserved for our review. *See Knapp v. Wilson N. Jones Mem'l Hosp.*, 281 S.W.3d 163, 170 (Tex. App.—Dallas 2009, no pet.) ("[A] party's argument on appeal must comport

---

[7] Desi does not make his UCC argument of accord and satisfaction on appeal. Therefore, Desi is unable to rely on the UCC for the proposition that Tammy's failure to return the money within ninety days constituted acceptance of the money in lieu of the stock.

9

with its argument in the trial court."). Finally, as explained below, the record supports a finding that Tammy rejected Desi's offer for a cash payment in lieu of the stock.

Next, it appears that Desi is arguing that in its enforcement order, the trial court could only enforce the 2006 judgment for $8,000. However, as stated above, the trial court ordered Desi to turn over his stock in its 2009 Turnover Order, and Desi did not appeal that order. This is an appeal of the enforcement order, and Desi provides no authority supporting a conclusion that he can attack a trial court's enforcement order on the basis that the original turnover order was improperly granted. *See Cook v. Stallcup*, 170 S.W.3d 916, 920 (Tex. App.—Dallas 2005, no pet.) (providing that post-judgment orders enforcing a trial court's judgment are appealable orders and stating that enforcement orders "function like judgments"); *see also* TEX. R. CIV. P. 621 ("Even after plenary power has expired, a trial court retains inherent power to enforce its judgments.").

Desi also argues that Tammy is estopped from enforcement of the 2009 Turnover Order because she accepted the funds that he wired to her attorney. However, the trial court implicitly found that Tammy rejected the funds. We conclude that the record supports such a finding. The record shows that by letter, Tammy's attorney explicitly told Desi that Tammy had rejected the cash in lieu of the stock and instructed Desi not to send any cash. Despite receiving the letter, Desi sent the money to Tammy's attorney. Because the record supports a finding that Tammy rejected the funds in lieu of the stock, we cannot conclude that the trial court abused its discretion, even if we disagree with the trial court's finding. Moreover, Desi cites no authority, and we find none, supporting a conclusion that a judgment debtor may unilaterally determine how he will comply with the trial court's Turnover Order. In other words, Desi invites this

10

Court to conclude that he is allowed to disobey a trial court's turnover order requiring that he relinquish certain property. We decline to do so.

Next, Desi argues that the doctrine of laches precludes "the current turnover order" because "Tammy exercised an unreasonable delay retaining Desi's payment and then asserting a right to a turnover and a good faith change of position by Desi to his detriment because of the delay." As stated above, the trial court reasonably found that Tammy unequivocally rejected the funds in lieu of the stock. We decline to disturb that finding. Therefore, we are not persuaded that Desi relied to his detriment on Tammy's attorney's failure to promptly return the funds to him.[8] We overrule Desi's first issue.

## IV. CONCLUSION

We affirm the trial court's order of enforcement.

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
11th day of July, 2013.

---

[8] Although Desi cites a case, *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989) regarding laches, he does not explain how the doctrine of laches applies to the facts in this case. *See id.* (setting out the elements of laches as the following: "(1) unreasonable delay by one having legal or equitable rights in asserting them; and (2) a good faith change of position by another to his detriment because of the delay."); *see also* TEX. R. APP. P. 38.1(i) (providing that the appellant's brief must contain a clear and concise argument).